**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**Caption in compliance with D. N.J. LBR 9004-2(c)**

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
David J. Adler dadler@mccarter.com
Matthew B. Heimann mheimann@mccarter.com

*Counsel to the Official Committee of Unsecured Creditors*

| In re: | Chapter 11 |
|---|---|
| ZUCKER, GOLDBERG & ACKERMAN, LLC, | Case No. 15-24585 (CMG) |
| Debtor. | Hearing Date: December 4, 2015<br>Hearing Time: 10:00 a.m. |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S: (i) MOTION FOR AN ORDER REJECTING THE EXECUTORY CONTRACT WITH ACCESS INFORMATION MANAGEMENT OF WISCONSIN, LLC AND (ii) NOTICE OF ABANDONMENT OF STORED DOCUMENTS**

The Official Committee of Unsecured Creditors (the "Committee") of Zucker, Goldberg & Ackerman, LLC (the "Debtor"), appointed pursuant to section 1102 of title 11 of the United States Code (the "Bankruptcy Code"), by its undersigned counsel, McCarter & English, LLP, submits this Objection to the Debtor's: (i) Motion to Reject the Executory Contract with Access Information Management of Wisconsin, LLC (the "Rejection Motion") [ECF Doc. # 200] and (ii) Notice of Proposed Abandonment of the Stored Documents (the "Proposed Abandonment") [ECF Doc. ## 199, 203]. In support of the Objection, the Committee represents as follows:

1. The Debtor is a law firm that has been in existence since 1923. Prior to its bankruptcy, the Debtor was handling tens of thousands of foreclosure cases which, at one point, accounted for "in excess of forty (40%) percent of the pending foreclosure cases in the State of New Jersey." *See* Certification of Michael S. Ackerman in Support of First Day Motions [ECF Doc. # 14 at ¶¶ 4, 10].

2. In the Rejection Motion, the Debtor seeks to reject a Master Agreement with Access Information Management of Wisconsin, LLC ("Access"), dated November 8, 2014, concerning Records Storage and Management Services (the "Access Agreement").[1]

3. In addition, through the Proposed Abandonment, the Debtor seeks to abandon what is defined as the "Stored Documents" at Access's storage facility:

> The Debtor seeks to abandon all stored documents (the "Stored Documents") at the storage facility operated by Access Information Management of Wisconsin, LLC ("Access"), wherever located, including those located at 105 Commerce Drive, Aston, Pennsylvania, 19014 (the "Storage Facility"). The Stored Documents consist of approximately 12,700 cubic feet (cu ft) of paper files. The Stored Documents are of no value or benefit to the Debtor's Estate, and continued storage costs are an unnecessary burden.

*See* Proposed Abandonment [ECF Doc. # 203].

4. The Committee opposes both the Rejection Motion and the Proposed Abandonment.

**OBJECTION**

5. While the Committee agrees that expenses relating to the Stored Documents should be minimized, the Rejection Motion and the Proposed Abandonment are flawed for a number of reasons and, as a result will not likely achieve that goal. Given these flaws, the Committee believes that the Debtor should withdraw the Rejection Motion and the Proposed Abandonment and develop better alternatives (such as a motion to approve file-disposition

---

[1] A copy of the Access Agreement is attached to the Rejection Motion as Exhibit "A."

protocols). To the extent that the Debtor wishes to pursue the Rejection Motion, the relief should be denied for the following reasons:

6. *First*, the volume of the Stored Documents is staggering. The Debtor states that the Stored Documents amount to approximately 12,700 cubic feet. *See* Motion at ¶ 9. To appreciate the volume of space at issue here, 12,000 cubic feet is equal to a room 100 feet long, 12 feet wide, and 10 feet high – in this case completely filled with paper. Alternatively, 12,636 cubic feet is equal to a regulation tennis court filled with paper six feet high. Whatever the visualization, the volume of client files that are included in the five-page Rejection Motion is simply staggering.

7. *Second*, as client files, the Stored Documents likely contain sensitive and confidential information of the Debtor's former clients in the form of attorney-client communications and other protected communications. Lawyers have duties to safeguard confidential information (even to former clients) under the New Jersey Rules of Professional Conduct ("RPC"). *See* RPC 1.6(a), Confidentiality of Information ("A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b), (c), and (d).");[2] *see also* RPC 1.9(c)(2), Duties to Former Clients ("**A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require with respect to a client**.")(emphasis supplied). A lawyer's negligent handling of client files can result in a waiver of the attorney-client privilege. *See Dev. Specialists, Inc. v. Dechert*, 2014 WL

---

[2] The exceptions in RPC 1.6(b), (c), and (d) are inapplicable to this matter.

3
ME1 21471201v.1

3858523, *6 n.8 (S.D.N.Y. July 31, 2014) (interpreting New York law, negligence of counsel can result in waiver of attorney-client privilege under the doctrine of implied waiver).

8. *Third*, given the nature of the Debtor's business, the Stored Documents no doubt contain personal, sensitive information of the borrower defendants and other third parties.[3] The abandonment of these files may give rise to claims under federal and state law by any person who is injured as a result of the Debtor's failure to safeguard sensitive, personal information.

9. *Fourth*, the Committee notes that there are a number of pending cases asserting claims against the Debtor for allegedly violating federal and state consumer lending laws. *See*, *e.g.*, Statement of Financial Affairs, Question # 4 [ECF Doc. # 149] (listing 15 pending actions). Carolyn Bailey, a *pro se* litigant against the Debtor, has opposed the Rejection Motion and the Proposed Abandonment, asserting that the Stored Documents may include discoverable information in her action, which is presently on appeal. *See* ECF Doc. # 213. If the Proposed Abandonment were approved without any review as to whether the Stored Documents include potentially relevant information in these litigations, this may result in potential claims of spoliation.

10. In conclusion, given the sensitive nature of the Stored Documents, abandonment by the Debtor may result in claims[4] being asserted against the Debtor from: (i) its former clients for failing to maintain the confidentiality of client communications and/or other ethical breaches, (ii) from borrower defendants for inadequately safeguarding sensitive, personal information of third parties, and (iii) by litigants for potential spoliation of evidence.[5]

---

[3] One former client, MidFirst Bank ("MidFirst"), has already opposed the Proposed Abandonment and cross-moved to compel the return of the client's files. *See* MidFirst's *Response to Notice of Proposed Abandonment and Cross Motion to Turn Over Client Files* (the "MidFirst Objection") [ECF Doc # 215].
[4] Because the act of abandonment may result in the claim, the Committee is concerned that claimants may seek administrative priority status for any claims that arises.
[5] The Committee notes that if it were ultimately determined that the Debtor breached a duty owed to its clients or others as a result of the Proposed Abandonment, the members of the Debtor may be personally liable for these acts.

11.     *Fifth*, given the above issues including the Debtor's ethical and other obligations, the Debtor's Rejection Motion and Proposed Abandonment should not be viewed under the deferential business-judgment rule.

12.     *Sixth*, it has become commonplace in the modern law-firm bankruptcy case that the debtor seek approval of a file-disposition protocol that provides notice to former clients with an opportunity to retrieve and/or destroy the files in question **at the former clients' expense**. *See In re Coudert Bros. LLP* (Bankr. S.D.N.Y. Case No. 06-12226 (RDD), ECF Doc. # 222) (order entered implementing file-disposition protocol requiring debtor to provide clients with specific and targeted notices of abandonment and an opportunity to repossess files at clients' expense)[6]; *In re Dreier LLP*, (Bankr. S.D.N.Y. Case No. 08-15051 (SMB), ECF Doc. # 870 (same).[7] These protocols were designed to minimize the costs of the estate (consistent with the ethics rules) and provide an opportunity for former clients to obtain their respective files and minimize the potential claims that may result from the destruction and/or abandonment of these files.

13.     In the bankruptcy of Dewey & LeBoeuf LLP, for instance, the debtor initially chose to proceed in a similar manner as the Debtor is proposing to do here. Judge Glenn refused to approve the abandonment:

> You probably don't know how many years of files there are. But in addition to attorney-client privileged information, there's probably a great deal of confidential client information, whether it would otherwise be protected by attorney-client privilege or not. . . . I'm not going to grant your motion the way it — I have no trouble about approving a procedure to let clients try and get their files back. Okay? I'm fully supportive of that. What I'm balking at is what happens to what I expect is going to be the vast majority of these files that aren't going to be claimed any time soon.

---

*See* Rule 1:21-1B(a)(2) of New Jersey Court Rules, Rules of General Application ("[a]ny attorney who is a member . . . of the limited liability company shall remain personally liable for his or her own negligence, omissions, malpractice, wrongful acts, or misconduct, and that of any person under his or her direct supervision . . . .").

[6] A copy of the Coudert File Disposition Order can be accessed by clicking this link: https://ecf.nysb.uscourts.gov/doc1/12605919757

[7] A copy of the Dreier File Disposition Order can be accessed by clicking this link: https://ecf.nysb.uscourts.gov/doc1/126010428579

5

*   *   *

> I'm going to require an ethics opinion. You're going to have to — it's going to be an expense from the estate but I want to see a declaration or an affidavit from a recognized authority on professional ethics on the disposition of client files. I'm not saying who to go to. Consult with the committees and the U.S. Trustee and I'm certainly — I understand the need to cut off these costs. . . . But I want someone — a recognized authority for professional, legal ethics who addresses an opinion as to the appropriate disposition of client files in the event of the insolvency of a law firm such as Dewey & LeBoeuf. Okay?[8]

*See*, *e.g.*, *In re Dewey & LeBoeuf LLP* (Bankr. S.D.N.Y. Case No. 12-12321 (MG) [ECF Doc. # 217], transcript of hearing, at pp. 110-16 attached hereto as Exhibit "A").[9]

14. *Seventh,* the Rejection Motion and the Proposed Abandonment (and the willful blindness associated with it) should be juxtaposed against the Debtor's continued excuses in response to the Committee's repeated requests that the Debtor immediately undertake actions to preserve the value and collectability of its inventory.

15. Among other things, the Committee has asked the Debtor to: (i) establish a protocol for the transfer of files that would require the successor firm to notify the Debtor upon a liquidity event; (ii) institute actions immediately for the collection of aged accounts receivables; and (iii) request authority from this Court to withhold the disbursement of any funds from the Debtor's trust account to any client that owes the Debtor funds. These proposals have all been rejected on the basis that the proposed course of conduct would violate some New Jersey ethical rule. Ironically, all of these actions suggested by the Committee have been approved in other law firm bankruptcies (Coudert, Dreier, and Dewey & LeBouef). The only action that has **NOT**

---

[8] As the MidFirst Objection demonstrates, this issue is now a direct concern, given the Debtor's apparent failure to comply with MidFirst's requests for its files. *See* MidFirst Objection, preamble.

[9] *See also* http://www.reuters.com/article/2012/07/12/us-dewey-files-idUSBRE86B1CG20120712#dJ1AlKrhJsE7M4wK.97

6

ME1 21471201v.1

been approved (because it may violate an ethical rule) has been the indiscriminate abandonment of client files (s*ee* ¶13, *supra*) – which is what the Debtor seeks to do here.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that, unless withdrawn by the Debtor, this Court deny the Rejection Motion and the Proposed Abandonment. Alternatively, the Committee respectfully requests that any order granting the Rejection Motion and the Proposed Abandonment incorporate directives to Access and the Debtor that the Stored Documents be preserved and maintained until further authorized by this Court.

Dated: November 11, 2015				**McCARTER & ENGLISH, LLP**

By: /s/ *David J. Adler*
    David J. Adler
    Matthew B. Heimann
    Four Gateway Center
    100 Mulberry Street
    Newark, New Jersey 07102
    Telephone: (973) 622-4444
    Facsimile:  (973) 624-7070

    *Counsel to the Official Committee of Unsecured Creditors*

7

ME1 21471201v.1

**EXHIBIT "A"**

**DEWEY & LEBOEUF LLP** 110

1  the funds that are available in the estate to satisfy those
2  types of costs, we are not able to commit to satisfying them --
3  the costs; and believe that there is authority under the
4  Bankruptcy Code, under Section 554, for the estate -- for the
5  debtor to abandon burdensome property.
6           These are aged files.  Eighty-five percent of the
7  files have not been --
8           THE COURT:  Well, they're not your property.
9           MS. SHEIKH:  -- accessed.
10          THE COURT:  Are they your property?
11          MS. SHEIKH:  Well, we certainly have an interest in
12 the files.  We have had some internal discussion about whether
13 the files are property of the estate.  Property of the estate
14 is defined fairly broadly to include any property in which the
15 debtor has an interest.  And we do believe that we have an
16 interest in the files, if not a property interest in them.
17          THE COURT:  Are there any state ethics opinions
18 dealing with retention or destruction of files?  I really am
19 very troubled by this notion that you just -- I understand
20 there are limits to funding; you've got a budget; it either is
21 or it isn't sufficient funds included in the budget.  But I've
22 got to tell you, I mean, if you came forward with persuasive
23 authority that you could just wash your hands of these files,
24 that's fine.  But the notion that -- now, it was hyperbole to
25 suggest that somebody is going to send them to the New York

**DEWEY & LEBOEUF LLP**    111

1  Times. But there'd be nothing to stop anybody from doing that.

2  You know, that really bothers me, Ms. Sheikh. You're
3  trying to wash your hands of files from a law firm that dates
4  its history, what, a hundred years? And I don't know how many
5  years of files there are. You probably don't know how many
6  years of files there are. But in addition to attorney-client
7  privileged information, there's probably a great deal of
8  confidential client information, whether it would otherwise be
9  protected by attorney-client privilege or not. I'm not ready
10 to -- you know, I'm not going to grant your motion the way
11 it -- I have no trouble about approving a procedure to let
12 clients try and get their files back. Okay? I'm fully
13 supportive of that. What I'm balking at is what happens to
14 what I expect is going to be the vast majority of these files
15 that aren't going to be claimed any time soon.

16        MR. TOGUT: Your Honor, may I suggest -- it's Al
17 Togut -- that you grant the procedure for the notification and
18 all that, and we adjourn the balance of the motion to the
19 25th of July when we're back here, and give us time to research
20 the questions the Court has raised. And we will give you an
21 additional submission. And we can deal with the balance of the
22 motion on the 25th.

23        THE COURT: Anybody else wish to be heard? Mr.
24 Weisfelner, you were getting up.

25        MR. WEISFELNER: Your Honor, my only point was, once

**DEWEY & LEBOEUF LLP** 112

1  the clients are being afforded notice that their property is
2  available to be picked up and that client then chooses not to
3  respond, I guess the question I have, as opposed to an
4  assertion is, what then happens to the client's expectation of
5  maintaining either confidences or privileges, if they were
6  afforded adequate opportunity to come protect, preserve, and
7  retrieve their files?  Which is why I support debtor's
8  counsel's recommendation that we take this in two steps.
9          I think the debtor's request as to what to do with its
10 files under the circumstances, ought to depend on whether or
11 not the client is proactive or not with respect to its
12 privileges and its confidences.
13         THE COURT:  Ms. Sheikh, tell me again -- let's focus
14 on the notice procedures.  What are the notice procedures for
15 this --
16         MS. SHEIKH:  Well --
17         THE COURT:  -- if this order's granted?
18         MS. SHEIKH:  -- we will be publishing a notice in the
19 global edition of the Wall Street Journal that former partners
20 and clients of Dewey & LeBoeuf will have forty-five days to
21 submit a form -- a file retrieval form.  And all of the 4,500
22 former clients as well as all of the former partners of the
23 firm will receive a hard -- a mailing of the notice.  And they
24 will have forty-five days to submit the form.
25         Within thirty days of submitting the form, clients

**DEWEY & LEBOEUF LLP** 113

1 and/or their authorized representatives will be required to
2 retrieve their files. The debtor has authority to extend that
3 period, if for some reason we're not able to accomplish the
4 file retrieval in the thirty-day period.
5       After the forty-five days, if a client or a former
6 partner has not submitted the form, they'll be deemed to have
7 abandoned the files to the estate. And under those
8 circumstances, what we had proposed, which is this issue will
9 be adjourned, is that the debtor would then be permitted to
10 dispose of the files as it deems fit. And we've agreed to
11 adjourn that issue of how the files will ultimately be disposed
12 of until July 25th.
13       I do want to emphasize, though, that there is a real
14 need to cut off administrative rent on the storage, so --
15       THE COURT: I understand that.
16       MS. SHEIKH: -- we will need to address the issue --
17       THE COURT: I understand that. I wish I could resolve
18 it today. But --
19       MS. SHEIKH: Yes.
20       THE COURT: -- your proposed resolution, I'm troubled
21 by not having been given sufficient authority that you can just
22 cut these files loose.
23       MS. SHEIKH: Right. No. And there's very limited
24 authority on this issue. We did do extensive research and
25 found very limited authority in the context of a bankruptcy

**DEWEY & LEBOEUF LLP** 114

1  proceeding.  And in many of the cases, the debtor has paid for
2  destruction of files and there's a limited number of -- well,
3  the Thelen case, the files were abandoned and the treatment of
4  their claims for destruction hasn't -- according to counsel for
5  CitiStorage hasn't been addressed yet.  I wasn't aware of that
6  distinction.  But I just wanted to clarify a couple of things.
7  So --
8              THE COURT:  Well, I would -- this may not make --
9              MS. SHEIKH:  -- short statements that were made, as
10 well.
11             THE COURT:  -- you and your colleagues happy but I
12 will defer the issue of the disposition of the files, but I'm
13 going to tell you now, I'm going to require an ethics opinion.
14 You're going to have to -- it's going to be an expense from the
15 estate but I want to see a declaration or an affidavit from a
16 recognized authority on professional ethics on the disposition
17 of client files.  I'm not saying who to go to.  Consult with
18 the committees and the U.S. Trustee and I'm certainly -- I
19 understand the need to cut off these costs.
20             MS. SHEIKH:  Um-hum.
21             THE COURT:  Okay?  But I want someone -- a recognized
22 authority for professional, legal ethics who addresses an
23 opinion as to the appropriate disposition of client files in
24 the event of the insolvency of a law firm such as Dewey &
25 LeBoeuf.  Okay?

**DEWEY & LEBOEUF LLP**  115

1    MS. SHEIKH:  Yes, Your Honor.

2    THE COURT:  All right.  So --

3    MS. SHEIKH:  Understood.

4    THE COURT:  -- the motion is granted to the extent
5  described which is, namely, the procedures for notice and
6  seeking to return client files.  With respect to the objections
7  of the storage facilities, nothing -- and you're going to have
8  to revise the order --

9    MS. SHEIKH:  Um-hum.

10    THE COURT:  -- and you should give them an opportunity
11  to review the form of the order, and I think it should
12  expressly provide that nothing in the Court's decision resolves
13  any issue with res -- this isn't necessarily the exact words
14  but the concept that I'm not resolving any issue as to any
15  claims for the costs of destruction that any storage facility
16  may assert.  That's for another day.

17    Is that clear enough or -- I mean, because I'm --

18    MS. SHEIKH:  Yes, Your Honor.

19    THE COURT:  Okay.

20    MS. SHEIKH:  I think so.

21    THE COURT:  All right.  Okay.

22    MS. SHEIKH:  And I wanted to clarify one point for the
23  record.  I think counsel for CitiStorage suggested that 850
24  boxes of files had been retrieved by former clients.  There's
25  actually 850 --

**DEWEY & LEBOEUF LLP**  116

1   THE COURT:  Clients.

2   MS. SHEIKH:  -- matters.

3   THE COURT:  Yes.

4   MS. SHEIKH:  So it's many more.  I don't know the
5  count of boxes that were represented by the 850 matters but
6  it's certainly more than 850.

7   THE COURT:  Okay.  Look, Ms. Sheikh, I don't know
8  whether there's anything in the ALI's law governing lawyers on
9  this subject.  I remember -- I was on the members' consultative
10 group.  I remember discussions at meetings about this issue.
11 It may never have made it into the restatement.  Law firms have
12 struggled -- big law firms have struggled for the last several
13 decades with the issues of these ancient client files.  These
14 aren't necessarily ancient, but you may well have some very old
15 files in storage.  And somehow, I thought law firms had gotten
16 opinions from bar ethics committees about the proper
17 disposition of client files.

18      It doesn't deal with the issue of insolvency, but law
19 firms -- the reality is they're not required to keep client
20 files forever.  What you're trying to get out from under is the
21 destruction costs.  You may or may not be able to.  But these
22 issues -- I'm just not satisfied -- well, I'm satisfied to the
23 extent of let's get notice out, let's see who wants to retrieve
24 their files, but we'll deal with the next issue in due course,
25 okay?