UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

LECLAIRRYAN, a Professional Corporation
One Riverfront Plaza, 16th Fl.
1037 Raymond Blvd.
Newark, NJ 07102
Daniel M. Eliades, Esq.
(973) 491-3391 Direct
(973) 491-3604 Fax
Daniel.Eliades@leclairryan.com
Attorneys for 4S Technologies, LLC

In re:

**ZUCKER GOLDBERG & ACKERMAN, LLC,**

Debtor.

**Chapter 11**

**Case No. 15-24585 (CMG)**

Re: Docket Nos. 818, 819, 952 and 960

Hearing Date: September 15, 2017 at 10:00 a.m.

**REPLY IN SUPPORT OF LIMITED OBJECTION OF 4 S TECHNOLOGIES, LLC TO THE JOINT PLAN OF ORDERLY LIQUIDATION FILED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED APRIL 10, 2017 (AS MODIFIED)**

4S Technologies, LLC ("<u>4S</u>"), by and through its undersigned attorneys, submits this Reply: (a) in further support of its Limited Objection to the *Joint Plan Of Orderly Liquidation Filed By The Debtor And The Official Committee of Unsecured Creditors Dated April 10, 2017 (As Modified)*, Docket No. 952 (the "<u>Limited Objection</u>"), and (b) in reply to the *Memorandum of Law of the Official Committee of Unsecured Creditors in Response to Objections to the Joint Orderly Liquidation dated April 10, 2017 (As Modified) filed by: (1) 4S Technologies, LLC; (2) Michael S. Ackerman; and (3) JP Morgan Chase Bank, N.A.,* Docket No. 960 (the "<u>Late

Response").[1]  Collectively, Zucker Goldberg & Ackerman LLC ("ZGA" or the "Debtor") and the Official Committee of Unsecured Creditors of Zucker Goldberg & Ackerman LLC (the "Committee") are referred to herein as the "Proponents".  The Joint Plan of Orderly Liquidation of the Debtor and the Committee, dated April 10, 2017 (as modified), Docket No. 818 is referred to as the "Plan".

## I. PRELIMINARY STATEMENT

1. The Committee's response to the Limited Objection of 4S was, literally, a day late and a dollar short.  The Late Response provides a weak retort to 4S' objections, mischaracterizes other arguments of 4S, and ignores the balance of the positions set forth in the 4S Limited Objection.  In the Late Response, the Committee neither explained its position of how a substantive consolidation claim survives confirmation of a plan nor identified any authority to support that position, despite its unequivocal assurances at the pre-confirmation hearing that it would do so.  The deficiencies in the arguments put forth in the Late Response are addressed in Section II below.

2. What is stunningly absent from the Late Response, and elsewhere in the record in connection with the upcoming confirmation hearing, is any indication that the Committee will be able to address (let alone meet) its burden of proof in attempting to confirm the Plan.[2]  Among other things:

(a) The bankruptcy estate is administratively insolvent.  According to the last filed

---

[1] At the pre-confirmation hearing on August 25, 2017, the Committee was directed to file a response to the objections to the Plan by on or before September 7, 2017.  The Late Response was filed on September 8, 2017.

[2] The proponent of a chapter 11 plan bears the burden of proving that the plan satisfies each of the statutory requirements set forth in § 1129(a).  See In re Kemp, 134 B.R. 413 (Bankr. E.D. Cal. 1991); In re Revco D.S., Inc., 131 B.R. 615, 620 (Bankr. N.D. Ohio 1990); In re Rusty Jones, Inc., 110 B.R. 362, 373 (Bankr. N.D. Ill. 1990); In re Texaco, Inc., 84 B.R. 889, 891 (Bankr. S.D. N.Y. 1988).

Monthly Operating Report, the Debtor has less than $50,000 in deposit accounts and no other liquid assets. See Docket No. 955. Upon information and belief: (a) JP Morgan Chase Bank N.A. ("Chase") asserts a remaining secured claim of at least $400,000, inclusive of its attorney's fees and costs (see Docket No. 877); and (b) the amount of administrative claims against the ZGA bankruptcy estate is approximately $2,000,000 -- which is expected to rise as a result of, among other things, the filing of additional fee applications by professionals.

(b) The Plan still has not been signed on behalf of the Committee.

(c) The Proponents have not filed a certification of any witness competent to proffer testimony of satisfaction of the elements of 11 U.S.C. § 1129(a).[3] At the pre-confirmation hearing, 4S understood that the Court suggested that the Proponents confer on the submission of a joint certification. Today, the Committee submitted to the Court an unsigned certification from Michael Ackerman only. Docket No. 968. Apparently, the Committee has abandoned the concept of a joint proffer supporting confirmation of its own (joint) plan.

(d) Other than filing the Late Response, the Committee has not contacted 4S about attempting to resolve any of the issues raised by 4S in the Limited Objection, despite the invitation of 4S which was extended on August 25.

(e) The 4S Administrative Claim (as defined as the Limited Objection) was filed by 4S on June 13, 2017 – **three (3)** months ago. The Committee has filed neither an objection to the 4S Administrative Claim nor a formal motion seeking to estimate same. Rather, the Committee: (i) gladly accepted the benefits of 4S' post-petition

---

[3] Absent consensual resolution of the issues raised in its Limited Objection, 4S objects to the admission of any last minute certification which may be filed by the Proponents.

3

assistance liquidating ZGA accounts receivable for the benefit of the bankruptcy estate; (ii) knew that the 4S was accumulating an administrative claim on account of these efforts; (iii) sat silent after the 4S Administrative Claim was filed; and (iv) just a few days before the confirmation hearing, requested estimation of 4S' claims via some amorphous procedure unrecognizable in the Federal Rules of Bankruptcy Procedure or notions of due process.

(f) The Proponents apparently have no witness ready, willing and able to testify at the confirmation hearing in response to the objections to the Plan or in support of the Plan – particularly as to the feasibility or lack thereof.[4]

(g) The issue of feasibility is a significant hurdle that the Proponents need to clear. As noted in Paragraph 2(a), if all of the pending secured and administrative claims are allowed, the estate would need to realize at least $2,400,000 from its remaining assets before <u>any</u> money would flow to general unsecured creditors -- and that calculation does not include unfiled fee applications, any going forward expenses related to the liquidation of the remaining assets of the estate or the enduring costs of

---

[4] The Committee's request at Paragraph 5 of the Late Response to have this Court take judicial notice at the confirmation hearing of a laundry list of every pleading and argument filed and made or adduced in this two plus year old bankruptcy case is improper. For example, notwithstanding the Committee's plea to have this Court take judicial notice of the Examiner's Report, same is inadmissible per, among other things… See In re Refco Inc. Securities Litigation, 2013 WL 12191891 * 11 (S.D.N.Y. Mar. 11, 2013) ("But a Bankruptcy Examiner's report is hearsay when offered, as here, to prove the truth of the facts and conclusions propounded in it. And courts routinely find that there is no hearsay exception that would permit a Bankruptcy Examiner's report to be admitted into evidence"); see also In re Rickel & Assocs., Inc., 272 B.R. 74, 87-88 (Bankr. S.D.N.Y. 2002) ("The Examiner conducted an investigation, but he was not charged—nor could he be—with the duty to 'hear and determine' any claims in this case" and the report was inadmissible hearsay"). While bankruptcy courts "routinely consider and rely on the testimony and reports of examiners.... an examiner's report is ... not intended to establish evidence." In re Fibermark, Inc., 339 B.R. 321, 325 (Bankr. D. Vt. 2006)(citation omitted); In re Granite Broad. Corp., 369 B.R. 120, 129 (Bankr. S.D.N.Y. 2007) ("the Examiner's conclusions are not based on a full factual record and are technically hearsay."). Additionally, 4S contends that the conclusions of the Examiner's Report are flawed. See Docket No. 698.

4

administration. The largest residual asset of the estate is the remaining accounts receivable of ZGA.[5] It appears that the Committee is prepared to offer no testimony as to the post-confirmation effort to collect the remainder of ZGA's accounts receivable – perhaps because no real plan exists.[6] Upon information and belief, the Plan Administrator has not secured an agreement with Michael Ackerman, 4S or any of the remaining ZGA administrative staff with respect to collection of accounts receivable. In fact, the Plan Administrator has had no communications with 4S as to the support which 4S has traditionally provided in this regard.[7] The absence of an articulated (and comprehensive) plan for the Plan Administrator to maximize the recovery of the ZGA accounts receivable is mystifying.

## II.    REPLY TO THE COMMITTEE'S RESPONSE TO LIMITED OBJECTION

### A.    The Plan Cannot Allow the Plan Administrator to Pursue Post Confirmation Substantive Consolidation.

---

[5] In its last filed Operating Report, the Debtor represents that, net of amounts considered uncollectible as bad debt, the face amount its remaining accounts receivable total $3,048,637. Docket No. 955 at p. 39. Thus, exclusive of the net recoveries, **if any**, from litigation not related to accounts receivable – it appears that general unsecured creditors of the ZGA bankruptcy estate are likely to receive no distribution or a very small distribution from this case. Practically, this case has devolved into an effort to maximize the recovery for allowed chapter 11 administrative creditors who may compete for a larger piece of a shrinking pie.

[6] In response to the feasibility and implementation inquiry, the Committee says: "The Joint Plan specifically identifies the manner in which the Assets of the Debtor will be liquidated and the manner in which the Plan Administrator and his professionals will be paid." Late Response at Paragraph 17. This response offers no real information, especially for administrative creditors facing a fractional distribution and general unsecured creditors who may very well receive nothing at all.

[7] The Plan provides for rejection of executory contracts, such as the agreements between ZGA and 4S, as of the Effective Date of the Plan. The Plan Administrator has not contacted 4S about the prospect of filing a motion to assume any of the agreements prior to the Effective Date of the Plan. Likewise, the Plan Administrator has not contacted 4S about engaging 4S post-confirmation to assist the Plan Administrator in, among other things, collecting accounts receivable of ZGA for the benefit of the bankruptcy estate. Accordingly, 4S has filed a motion for stay relief seeking to terminate the agreements between ZGA and 4S. See Docket No. 965. That motion is pending.

5

3. The proposed Plan suggests, albeit ambiguously, that the Committee's purported claim for substantiative consolidation will be assigned to the Plan Administrator, who would then be able to pursue consolidation of the ZGA bankruptcy estate with 4S, **after** confirmation of the Plan. At the pre-confirmation hearing on August 25, 2017, the Committee removed any doubt surrounding this issue when its counsel advised that the Committee or Plan Administrator would seek substantive consolidation subsequent to confirmation of the Plan. Counsel also clearly advised this Court and parties in interest that the Committee response to the Plan objections would provide authority for the post confirmation substantive consolidation claim which is contemplated by the Plan.[8] The Late Response does not deliver on the Committee's promise. In fact, the Late Response ignores the issue – probably because the manner in which the Committee and Plan Administrator intend to implement the Plan is prohibited.

4. The reason that the Committee fails to advance any argument supporting post-confirmation substantive consolidation is that this remedy is simply unavailable as a matter of law. After an exhaustive search, counsel for 4S was unable to locate a single case granting substantive consolidation of a non-debtor with a debtor estate after confirmation of a plan. Despite its assurances, the Committee has offered no authority (or even an argument) supporting the viability of post confirmation substantive consolidation.

5. Initially, 11 U.S.C. §1123(a)(5)(C) does authorize, <u>as part of a plan of reorganization</u> – and upon provide due process as well as proving a meaningful factual basis to do so – that a bankruptcy court can substantively consolidate the estate with one or more persons. The Plan does not, however, seek substantive consolidation as part of a plan. The Plan, as confirmed by the Committee at the August 25, 2017 pre-confirmation hearing, seeks authority

---

[8] The Committee represented that it would be filing a pleading to justify post confirmation substantive consolidation to address "noise" from the 4S and Michael Ackerman "side of the room" that such remedy is unavailable as a matter of law.

6

for the Plan Administrator to pursue substantive consolidation of 4S with the ZGA bankruptcy estate <u>after</u> confirmation of the Plan.

6. Post-confirmation, it is not possible for any consolidation remedy to be granted, given that a debtor's estate ceases to exist upon confirmation of a plan. According to binding precedent of the United States Supreme Court, substantive consolidation involves the merger of the debtor's *estate* with the assets of one or more persons. <u>Sampsell v. Imperial Paper & Color Corp.</u>, 313 U.S. 215, 219 (1941). The Third Circuit has observed that "the debtor's estate ceases to exist once confirmation has occurred...." <u>Resorts Int'l, Inc. Litig. Trust v. Price Waterhouse</u>, 372 F.3d 154, 164 (3d Cir.2004). Practically speaking, then, it is impossible to consolidate the assets of a target defendant with an estate that no longer exists.

7. For this reason, the Plan Administrator could not sue 4S, or any other entity, seeking substantive consolidation as the Plan Administrator would lack capacity to do so and such remedy is unavailable as a matter of law. Moreover, the remedy of substantive consolidation is authorized under 11 U.S.C. §105 and, thus, a bankruptcy court's post-confirmation ability to authorize substantive consolidation is lacking.[9]

---

[9] Even assuming that a liquidating trustee could pursue substantive consolidation, numerous bankruptcy courts have held that a bankruptcy court lacks any authority to consolidate the assets of non-debtor entities with existing debtors. <u>See, e.g.</u>, <u>In re Circle Land & Cattle Corp.</u>, 213 B.R. 870, 877–78 (Bankr. D. Kan. 1997) (citing <u>In re Alpha & Omega Realty, Inc.</u>, 36 B.R. 416 (Bankr. D. Idaho 1984)); <u>In re DRW Property Co.</u>, 82, 54 B.R. 489 (Bankr. N.D. Tex. 1985); <u>In re R.H.N. Realty Corp.</u>, 84 B.R. 356 (Bankr. S.D.N.Y. 1988); <u>In re Julien Co.</u>, 120 B.R. 930 (Bankr. W.D. Tenn. 1990); <u>In re Lease–A–Fleet</u>, 141 B.R. 869 (Bankr. E.D. Pa. 1992); <u>In re Ira S. Davis, Inc.</u>, 1993 WL 384501 (E.D. Pa. Sept. 22, 1993); <u>In re Hamilton</u>, 186 B.R. 991 (Bankr. D. Colo. 1995)). These decisions question whether bankruptcy courts have subject matter jurisdiction over non-debtor corporations for purposes of substantive consolidation on the basis that it is contrary to the Bankruptcy Code and its limitations for involuntary bankruptcy petitions under §303. Although 4S does not necessarily adopt that position, these decisions certainly make valid points regarding the limitations on bankruptcy court jurisdiction. After confirmation of a plan, the jurisdiction of the bankruptcy court over non-debtor entities with respect to the remedy of substantive consolidation is even more limited and, consequently, no such remedy is available post-confirmation.

8.  This issue is ripe. In the Adversary Proceeding (defined in the Limited Objection of 4S), the Committee seeks substantive consolidation of 4S and the ZGA bankruptcy estate. The Plan purports to give the Plan Administrator the right to pursue substantive consolidation post confirmation. At the pre-confirmation hearing, the Committee declared that the Committee or the Plan Administrator intend to prosecute a substantive consolidation claim against 4S after confirmation of the Plan – yet failed to offer any support for the viability of this remedy post confirmation.

9.  While 4S contends that any argument to substantively consolidate 4S with ZGA is meritless (see Docket No. 698), the point is that applicable law bars the Committee from seeking that remedy post-confirmation. Because the Plan contemplates prosecution of post-confirmation substantive consolidation, and as the Committee has confirmed that it intends to seek post-confirmation substantive consolidation, the Plan does not comply with 11 U.S.C. § 1129(a)(1), and more specifically, 11 U.S.C. §1123(a)(5)(C). Section 1129(a)(1) provides that a plan must comply "with the applicable provisions of this title." Although a bankruptcy court is authorized under 11 U.S.C. §1123(a)(5)(C) to consolidate the debtor with another person or entity as part of the confirmation, nothing authorizes a bankruptcy court to do so *after* confirmation. A post-confirmation order that authorizes consolidation would, therefore, impermissibly expand the authority extended to the bankruptcy courts by Congress in 11 U.S.C. §1123(a)(5)(C). Therefore, 4S submits that any confirmation order specifically should include a provision which precludes the Committee or Plan Administrator from seeking substantive consolidation *after* confirmation of the Plan.

**B.     The Late Response Does Not Address the Mootness Objection.**

10.     In the Limited Objection, 4S specifically argued that certain provisions of the Plan were rendered moot by the Adversary Proceeding. Docket No. 952 at pp. 5-6. Specifically, 4S reasoned that:

> Among the rights proposed to be delegated to the Plan Administrator is the right "to commence a proceeding" against 4S for a determination that 4S "is the alter ego of the Debtor" and "to pierce the corporate veil" of 4S. See Plan at p. 23, §5.1.1(f).  No other rights against or related to 4S are "specifically or unequivocally" delegated to the Plan Administrator pursuant to the Plan.
>
> The Adversary Proceeding specifically includes a claim by the Committee to "pierce the corporate veil" of 4S. See Adversary Proceeding at Count Six. In the Adversary Proceeding, the Committee also seeks to recover alleged transfers made to 4S and to disallow any claims of 4S until 4S pays the amount of the alleged transfers to the ZGA bankruptcy estate. See Adversary Proceeding.
>
> 4S objects to the provisions of the Plan which purport to grant the Plan Administrator "rights" to commence a proceeding against 4S identical to a proceeding already commenced by the Committee. Accordingly, 4S requests that all provisions of the Plan which purport to grant the Plan Administrator the right to commence any cause of action against 4S be stricken.

Id. The Late Response offers absolutely no response to this Plan objection of 4S.

**C.     The Late Response Does Not Address the Assignment Objection.**

11.     In the Limited Objection, 4S specifically maintained that state law tort claims cannot be assigned to the Plan Administrator. Docket No. 952 at pp. 6-7. 4S asserted that:

> [T]he contemplated alter ego and veil piercing claims are remedies which appear to be grounded on poorly articulated state law torts. The proposed treatment of the alleged alter ego and veil piercing claims under the Plan amounts to no more than an assignment of state law tort claims to the Plan Administrator. The Plan Administrator would lack standing to bring such claims as New Jersey law prohibits the assignment before judgment of business or personal injury tort claims. Costanzo v. Costanzo, 248 N.J. Super 116 (Law Div. 1991). See also, Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 865-67 (D.N.J. 1993) ("It is clear that under New Jersey law, choses in action arising out of tort are not assignable prior to judgment."). Because state law tort claims cannot be legally assigned to the Plan Administrator, the provisions of the Plan which purport to grant the Plan Administrator the right to seek alter ego and/or veil piercing remedies against 4S

9

should be removed from the Plan.

Id. Again, the Late Response devotes not a single word in response to this objection by 4S.

**D. The Vague Boilerplate Language in the Plan Purporting to Assign or Preserve Litigation Claims is Impermissible.**

12. As part of its Limited Objection, 4S argued that the Plan contained vague and ambiguous language that could be unlawfully utilized to authorize the Plan Administrator to bring post-confirmation causes of action against 4S that are not specifically assigned and authorized by this Court. 4S wrote in its Limited Objection:

> Applicable state law claims and causes of action which are preserved by a plan of reorganization, and retained for post-confirmation prosecution, must be specifically and unequivocally specified in the plan. "Because the confirmation of a Chapter 11 Plan dissolves the bankruptcy estate and the rights and powers created under the Bankruptcy Code, the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation." See In re Mako, Inc., 985 F.2d 1052, 1055, n.3 (10th Cir. 1993).

13. The Committee writes: "4S asserts that the only claims that can be asserted against it post confirmation are claims for alter ego/corporate veil piercing." In this regard, 4S does contend that the only claims that the Plan preserves against 4S are for alter ego/corporate veil piercing.

14. The Committee then charges: "[4S] reaches this conclusion by misconstruing Plan, §5.1.1(f) and conveniently ignoring all the other provisions in §5.1.1 of the Plan." This observation is flatly incorrect.

15. The Committee attributes this strawman position to 4S in the hopes of concealing its inability to address 4S's actual arguments on this point. In this regard, the Committee asserts that the Bankruptcy Code's definition of "insider" could be construed to include 4S; that the term "Cause of Action" is "expansive and includes any cause of action, known or unknown, asserted or unasserted against any Person"; and that consequently, "Plan, §5.1.1(f) does not state that the only claims that can be asserted against 4S are those identified in that section." (Late Response, ¶¶22-24,

pp.7-8). The Committee then observes that "Plan, §5.1.1(b) empowers the Plan Administrator to liquidate Estate Assets and all Causes of Action. (Late Response, ¶¶24, p. 8).

16. As is evident from its Limited Objection, in truth, 4S readily understands that the Plan is drafted so that, after confirmation, the Liquidating Trustee could treat the Plan as a limitless grab bag of litigation rights that the Plan Administrator can unilaterally identify at a later date and then pursue at his election. 4S's point was that the Plan's intentions in this regard are contrary to law.

17. 4S's submission cited or referenced numerous precedents that supported its position that any cause of action to be asserted by a Plan Administrator must be specific as to the identity of the target defendant and the cause of action to be asserted. These authorities included: In re Mako, Inc., 985 F.2d 1052, 1055, n.3 (10th Cir. 1993); In re United Operating, LLC, 540 F.3d 351, 355 (5th Cir. 2008); In re Paramount Plastics, Inc., 172 B.R. 331, 333 (Bankr. W.D. Wash.1994); In re Tex. Gen. Petrol. Corp., 52 F.3d 1330, 1335 n. 4 (5th Cir. 1995); Harstad v. First American Bank, 39 F.3d 898, 902–903 8th Cir. 1994); In re Western Integrated Networks, 322 B.R. 156 (Bankr. D. Colo. 2005); In re Pen Holdings, Inc., 316 B.R. 495, 500–501 (Bankr. M.D. Tenn. 2004).

18. In response to this avalanche of support for 4S's position, the Committee pretends to find a distinction in that in the Fifth Circuit case of In re United Operating, LLC, 540 F.3d 351 (5th Cir. 2008), because "[i]n United, the debtor, Dynasty, sold its assets during the course of the bankruptcy and the confirmed plan specifically provided that the estate assets would not revest in the debtor upon confirmation." (Response, ¶29, p.9).

19. Actually reading the Fifth Circuit's decision, however, dispels any argument that this "distinction" was of any difference to the holding in that case (or the many others cited by 4S). In United Operating, the Fifth Circuit based its decision on due process concerns of notice to parties

11

before they voted on the plan – a concern that has nothing to do with whether assets re-vest in a debtor or not: "Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—'absent "specific and unequivocal" retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote.'" In re United Operating, LLC, 540 F.3d 351, 355 (5th Cir. 2008) (quoting, In re Paramount Plastics, Inc., 172 B.R. 331, 334 (Bankr. W.D. Wash.1994)).

20. Not to belabor the point, when a plan attempts a broad reservation of undefined litigation rights, due process and notice concerns exist regardless of what form the proposed plan takes. The Committee's distinction is empty and demonstrates only the Committee's inability to find any authority contrary to the principles set forth in 4S's Limited Objection.[10]

21. Because the only two causes of action referenced in the Plan against 4S are alter ego and piercing the corporate veil claims, those are the only claims the Plan Administrator may pursue against 4S, according to law.

**E.    4S is not a Defined Insider.**

22. Other contentions made by the Committee can be more briefly addressed. In its Limited Objection, 4S argued that it is not properly included within the defined term "Ackerman Parties." 4S wrote: "It should be noted that §5.1.1(b) provides for a delegation to the Plan Administrator of certain litigations rights against the 'Ackerman Parties.' However, that section does not provide any rights in favor of the Plan Administrator against 4S since 4S is not a relative, an affiliate, or an insider of Michael S. Ackerman. See Plan §1.2(2)."

---

[10] The Committee proposes that it will modify the proposed Joint Plan to include the following language at the beginning of Plan, §5.1.1(f): "Without any way limiting the Causes of Action against a Person …." 4S objects to this language for reasons previously stated: that blanket reservations are not permissible and do not lawfully protect any right on behalf of the Liquidating Trustee to bring a cause of action not specified in the Plan after confirmation.

23. In response, the Committee contends that the Bankruptcy Code's definition of "insider" is flexible enough so that it could be construed to include 4S. Nonetheless, neither this Court nor any other court has ever adjudicated that 4S is an "insider" of Ackerman within the meaning of §101(31) of the Bankruptcy Code and 4S contests and would resist any effort to do so. The Committee's response is ripe with the inference that the Plan Administrator could himself determine who is an "insider" subject to risk of being sued according to the Plan Administrator's authority to bring suit against one of the "Ackerman Parties" – without any prior notice or opportunity to object.

24. 4S has never been adjudicated by a court of competent authority to an "insider" of Michael Ackerman, and the law does not authorize either the Committee or the Plan Administrator to make to determine unilaterally that 4S is an "insider" of Michael Ackerman, or any other party for that matter. Therefore, 4S is <u>not</u> an "Ackerman Party," as a matter of law, and cannot be pursued by the Plan Administrator on such a basis under the terms of the Plan.

**F.     The Plan does not Account for the 4S Administrative Claim.**

25. In its initial Limited Objection, 4S made arguments that the Joint Plan does not comply with 11 U.S.C. §1129(a)(9) and 11 U.S.C. §1129(a)(5) or (11). In response, the Committee asserts that "[w]hile this might be correct," the Committee then charges that these objections would have merit if 4S's administrative claim was an "allowed" claim. The Committee contends that "[i]f there is a dispute as to liability or amount, as there is in this case, the Court is free to estimate the 'allowed amount' of the claim for purposes of confirmation." (Late Response, ¶13, p. 5).

26. 4S's Administrative Claim has been filed for months, and no party-in-interest – including the Committee – has filed an objection to it. Therefore, there is no pending dispute over the "liability or amount" of 4S's Administrative Claim.

27. For that matter, the Debtor scheduled 4S as a pre-petition unsecured creditor for a liquidated amount, and no party-in-interest has ever objected to 4S's unsecured claim.

28. The Committee states that "[i]f 4S wishes to pursue its 1129(a)(9)(a) objection, the Committee requests that the Court establish a schedule for the estimation of the allowed administrative claim for 4S." (Response, ¶14, p. 5). Initially, the Committee cannot be serious when it feigns surprise over 4S's intentions to pursue its administrative claim and its related objections under 11 U.S.C. §1129(a). Moreover, the Committee and its counsel are fully aware of the procedure to initiate a challenge to 4S's Administrative Claim.

29. 4S's claim is presumptively valid until the Committee, or another party-in-interest, files a formal objection to the claim, supported by certifications and/or other competent, admissible proof that tends to support an allegation that the claim is improper as to amount or liability. 4S then is allowed an opportunity to respond. Then – and only then – with a record before it, should the Court decide whether the moving party is entitled to proceed to with a hearing as part of a contested matter under Federal Rule of Bankruptcy Procedure 7001, *et seq*.

30. Having failed to object to 4S's claim, and having not shown any cause as to why this Court should authorize a contested proceeding or conduct a hearing, the Committee cannot ask this Court to simply schedule a hearing in a contested matter in its Response to a Limited Objection.

G. **Reservation of Rights.**

31. 4S repeats and reasserts hearing all of the reservation of rights set forth in Sections G and H of the Limited Objection (paragraphs 34 – 43). Docket No. 952 at p. 12-13.

### III.    CONCLUSION

For the reasons specified herein, 4S objects to the Plan as currently constituted. 4S submits that this version of the Plan cannot be confirmed. **The Plan, however, includes a**

**severability clause.** See Docket No 818 at Section 12.8. **The Plan specifically envisions this Court striking invalid, void or unenforceable provisions of the Plan by way of a confirmation order.** Id. **4S requests that this Court utilize the severability option in the Plan and that any confirmed plan be modified via order which takes into account each of the objections interposed herein and in its Limited Objection.**

                        Respectfully submitted,

                        **LECLAIRRYAN, A PROFESSIONAL CORPORATION**

                        /s/ Daniel M. Eliades, Esq.
                        Daniel M. Eliades, Esq.
                        LeClairRyan, a Professional Corporation
                        One Riverfront Plaza, 16th Floor
                        1037 Raymond Boulevard
                        Newark, New Jersey 07102
                        (973) 491-3391 Direct
                        (973) 491-3604 Fax

Dated: September 13, 2017