**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**WASSERMAN, JURISTA & STOLZ, P.C.**
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone: (973) 467-2700
Fax: (973) 467-8126
Daniel M. Stolz  dstolz@wjslaw.com
*Counsel to Zucker, Goldberg & Ackerman, LLC.,*
*Debtor and Debtor-in-Possession*

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
David J. Adler  dadler@mccarter.com
Matthew B. Heimann  mheimann@mccarter.com
*Counsel to the Official Committee of Unsecured*
*Creditors*



Order Filed on November 3, 2017
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In Re:

**ZUCKER, GOLDBERG & ACKERMAN, LLC.,**

Debtor.

Judge:  Christine M. Gravelle

Chapter:  11

Case No.:  15-24585 (CMG)

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND ORDER CONFIRMING
## JOINT PLAN OF LIQUIDATION

The First Modified Plan of Orderly Liquidated filed by the joint proponents, Zucker, Goldberg & Ackerman, LLC. and the Official Committee of Unsecured Creditors, is hereby confirmed pursuant to 11 U.S.C. §1129(a) and the provisions of confirmation contained on the following pages two (2) through fifteen (15) are hereby ORDERED.

**DATED: November 3, 2017**

_____
Honorable Christine M. Gravelle
United States Bankruptcy Judge

Debtor:    Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

Zucker, Goldberg & Ackerman, LLC (hereinafter the "Debtor") and the Official Committee of Unsecured Creditors (hereinafter the "Committee") having filed a First Modified Chapter 11 Plan on April 13, 2017 (docket no. 818) (hereinafter the "Plan")[1] and said Plan having been circulated to all creditors, claimants, and parties in interest and the Court having reviewed the contents of the Plan, the Ballots cast in favor and against the Plan, and all objections to confirmation of the Plan, and the Court having conducted hearings on September 15, 2017 and November 3, 2017 with respect to confirmation of the Plan, in accordance with 11 U.S.C. Section 1128(a), and the Court having received evidence by way of a proffer by counsel for the Debtor and a Certification of Michael S. Ackerman and by the Court, having taken judicial notice of filings and events in this Chapter 11 case, and all objections to confirmation having been resolved, withdrawn or overruled and good cause appearing for the entry of this Order,

**THE COURT FINDS AND CONCLUDES THAT:**

A.    <u>Exclusive Jurisdiction; Venue; Core Proceeding</u>. This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C.

---

[1] Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan and the Disclosure Statement. Any term used in the Plan, the Disclosure Statement, or the Confirmation Order that is not defined in the Plan, the Disclosure Statement, or the Confirmation Order but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

Debtor:     Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
                    Joint Plan of Reorganization

---

§§1408 and 1409. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.     Disclosure Statement Order. By Order dated April 17, 2017 (docket no. 820), the Court approved the Second Modified Disclosure Statement filed by the Debtor (the "Disclosure Statement Order"). In the Disclosure Statement Order, this Court, among other things, approved: (i) the Disclosure Statement as containing adequate information within the meaning of Section 1125 of the Bankruptcy Code; (ii) the contents of the Solicitation Package as complying with Bankruptcy Rules 2002 and 3017 and constituting sufficient notice to all interested parties; (iii) the Voting Deadline, the Confirmation Objection Deadline and scheduling the Confirmation Hearings; and (iv) the procedures for the solicitation and tabulation of votes to accept or reject the Plan as providing for a fair and equitable process, consistent with Section 1126 of the Bankruptcy Code.

C.     Good Faith Solicitation. Votes for the acceptance or rejection of the Plan were solicited in good faith and in compliance with the Disclosure Statement Order, Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), and all other applicable rules, laws and regulations. Accordingly, the Debtors and their agents, representatives, attorneys, advisors and other Persons involved in the solicitation process are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

Debtor:    Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
                    Joint Plan of Reorganization

---

D.   <u>Notice</u>. Due adequate and sufficient notice of the Disclosure Statement, the Plan, the Voting Deadline, the Confirmation Objection Deadline and the Confirmation Hearing was provided to all parties entitled to such notice, including all known holders of Claims, and no other or further notice is or shall be required.

E.   <u>Tabulation of Votes</u>. As evidenced by the Tabulation Declaration, all Impaired Classes of Claims have voted to accept the Plan.

F.   <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

    1.   <u>Property Designation and Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Claims and Priority Tax Claims (which are not required to be classified), Article III of the Plan designates four Classes of Claims. The Claims placed in each Class are substantially similar to other Claims in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes do not unfairly discriminate. Therefore, the Plan satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

    2.   <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. The Plan specifies the Classes of Claims that are unimpaired. Therefore, the Plan satisfies Section 1123(a)(2) of the Bankruptcy Code.

    3.   <u>Specification of Treatment of Impaired Classes of Claims (11 U.S.C. § 1123(a)(3))</u>. The Plan specifies the Classes of Claims that are impaired under the Plan and the treatment of Claims in all such Classes. Therefore, the Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

    4.   <u>Equal Treatment Within Each Class (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim. Therefore, the Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

Debtor:     Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
                    Joint Plan of Reorganization

---

5.      <u>Adequate Means for Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provision entitled "Means for Implementation of the Plan," sets forth numerous provisions that facilitate the implementation of the Plan.  Therefore, the Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

6.      <u>Discretionary Contents of the Plan (11 U.S.C. § 1123(b))</u>.  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) the retention of jurisdiction by this Court as to, among other things, all matters arising out of the Chapter 11 Case and the Plan, (b) the disposition of any remaining executory contracts and unexpired leases, (c) Included within the discretionary provisions of the Plan is the appointment of Eduardo J. Glas, Esq. as Plan Administrator for the purposes set forth in the Plan.  Mr. Glas' appointment as the Plan Administrator is hereby approved.

G.      <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor and Committee have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case and the formulation of the Plan.  The Plan was proposed with the legitimate and honest purpose of maximizing the recovery to holders of Allowed Claims under the circumstances of this Chapter 11 Case.

H.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  The Professional Persons in this Chapter 11 Case are subject to the requirements of Sections 330 and 331 of the Bankruptcy Code and their respective fees.  Fee applications have been or will be filed by the Professional Persons and have and will be reviewed by this Court as of the entry of this Order, and, therefore, are subject to approval by the Court as reasonable.  Therefore, the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

Debtor:     Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

I.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which

a governmental regulatory commission has jurisdiction.

J.      <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The evidence proffered or

adduced at the Confirmation Hearing (1) is persuasive and credible, (2) has not been controverted

by other evidence or have not been challenged, (3) is based upon reasonable and sound

assumptions, and (4) establish that each holder of an Impaired Claim either has accepted the Plan

or will receive or retain under the Plan, on account of such Claim, property of a value, as of the

Effective Date, that is not less than the amount that such holder would receive or retain under

chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies Section 1129(a)(7)

of the Bankruptcy Code.

K.      <u>Acceptance by All Impaired Classes (11 U.S.C. § 1129(a)(8)(10))</u>.  All

Classes that are impaired under the Plan have voted to accept the Plan without counting the votes

of any insiders.

L.      <u>Treatment of Claims Entitled to Priority (11 U.S.C. § 1129(a)(9))</u>.  The

treatment of Allowed Administrative Expense Claims and Allowed Priority Non-Tax Claims under

the Plan satisfies the requirements of Section 1129(a)(9)(A) and (B) of the Bankruptcy Code.  The

treatment of Allowed Priority Tax Claims under the Plan either does not implicate or satisfies the

requirements of Section 1129(a)(9)(C) of the Bankruptcy Code and the treatment of Allowed

Secured Claims under the Plan satisfies the requirements of Section 1129 (a)(9)(D) of the

Bankruptcy Code.

Debtor:     Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
                    Joint Plan of Reorganization

---

M.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan, Disclosure Statement and Exhibits thereto and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any objection to the Plan, and (iii) establish that the Plan is feasible. Therefore, the Plan satisfies Section 1129(a)(11) of the Bankruptcy Code.

N.     <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Debtors will pay, on or before the Effective Date, any unpaid fees payable under 28 U.S.C. § 1930, thereby satisfying Section 1129(a)(12) of the Bankruptcy Code.

O.     <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the applicable of section 5 of the Securities Act of 1933 (15 U.S.C. § 77(e)). Therefore, the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

P.     <u>Executory Contracts</u>. All executory contracts and leases will be deemed rejected on the Effective Date. For avoidance of doubt, the "Agreements" as defined in the Motion for Relief from the Automatic Stay of 4S Technologies, LLC (Docket No. 965) (the "4S MFR"), are executory contracts which shall be deemed rejected as of the Effective Date. Within five (5) days after the Effective Date, the Plan Administrator shall remove from any 4S location all of the "ZGA Property" (defined in the 4S MFR) and 4S shall cooperate in the turnover of the ZGA Property to the Plan Administrator.. The 4S MFR is deemed resolved by entry of this Order.

Q.     <u>Retention of Jurisdiction</u>. The Court may properly retain jurisdiction over the matters set forth in the Plan.

Debtor:   Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

R.    <u>Modification of the Plan</u>.  Pursuant to 11 U.S.C. § 1127, the Debtor and

Creditors Committee have submitted certain proposed Modifications to the Plan, which are set

forth hereinafter and pursuant to 11 U.S.C. 1127 (a) are deemed approved and shall become part

of the Plan confirmed hereunder:

- Article 1.1.76 "Liquidating Estate" means the Debtor following the Effective Date of this Plan.

- Article 1.1.93 shall be amended to delete:  "Note this definition needs to be harmonized with Section 2.4 which permits the Plan Administrator to establish a reserve "to appropriately perform his duties"."

- Article 5.1 of the Plan will be deemed amended and modified to add the following language:

  "In the event of a conflict between the provisions of this Article 5.1 and any other Article or provision of this Plan or the Disclosure Statement, this Article 5.1 shall be deemed to govern. All of the Causes of Action, Claims, rights or interests of the Estate, which are described herein are subject to applicable law and the rights, defenses, offsets and remedies of any Person against whom any such Causes of Action, Claims, rights or interest of the Estate may be asserted and nothing contained in the Plan or Confirmation Order is or shall be deemed a finding by the Bankruptcy Court as to the validity or merits of any outstanding Cause of Action, Claim, right or interest of the Estate or any defenses thereto."

- Article 5.1.7 shall be amended and replaced by the following:

  "<u>5.1.7  Conflicts of Interest</u>.

  Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the

performance of any aspect of his duties under the Plan Administration Agreement, the issue shall first be brought to the attention of the United States Trustee. Without limiting the foregoing, in the event that (i) a Third Party Provider were to execute a Third Party Provider Election Form, thereby authorizing the Plan Administrator to commence a Third Party Provider Claim in the name of the Third Party Provider, and (ii) that same Third Party Provider is a party to an Avoidance Action and has asserted a constructive trust defense, than, such Avoidance Action shall be considered a "Conflict Preference". In the event of Conflict Preference, the parties will expeditiously discuss and endeavor to agree on identifying a "Conflict Plan Administrator" to exercise the powers and duties of the Plan Administrator, with respect to such Conflict Preference. Any individual proposed by the parties to serve as Conflicts Plan Administrator will be communicated to the Office of the United States Trustee with sufficient time to allow for consideration of conflicts. All parties reserve the right to seek assistance form the Bankruptcy Court, with respect to any assertion that the Plan Administrator holds a Conflict of Interest or the final naming of any Conflict Plan Administrator and the Bankruptcy Court reserves all necessary jurisdiction to enforce this paragraph.

- Article 10.3 of the Plan shall be deemed modified as follows:

"<u>10.3 Limitation of Liability</u>.

The Debtor, the Committee and their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys and representatives (collectively, the "<u>Exculpated Parties</u>"), will neither have nor incur any liability to any Entity for any action in good faith taken or admitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect, or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful or self-interested misconduct, fraud or gross negligence (in each case, liability shall be subject to determination by final Order of the Bankruptcy Court. However, any act or admission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence,

Debtor:  Zucker, Goldberg & Ackerman, LLC

Case no.:  15-24585 CMG

Caption of Order:  Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

fraud or willful misconduct, provided that such Bankruptcy Court Order
was obtained on proper notice and was not obtained through gross
negligence, fraud or willful misconduct by such Indemnified Parties).
Without limiting the generality of the foregoing, each Exculpated
Party shall be entitled to and granted the protections of Section 1125 (e) of the
Bankruptcy Code. No provision of this Plan, or the Disclosure Statement
shall be deemed to act to or release any claims. Litigation claims or rights
or liabilities that the Liquidating Estate may have against any Entity, or any
Person for any act, omission, or failure to act that occurred prior to the
Effective Date, nor shall any provision of this Plan be deemed to act to
release any Litigation or Litigation Claims.

- Article 10.5 of the Plan shall be deemed modified as follows:

  <u>10.5 Post Confirmation Liability of Plan Administrator and Plan Oversight
  Committee.</u>

  The Plan Administrator and the members of any Plan Oversight Committee,
  together with their consultants, agents, advisors, attorneys, accountants,
  financial advisors, and other representatives and the professionals engaged
  by the foregoing (collectively the "<u>Indemnified Parties</u>") shall not be liable
  for any and all liabilities, losses, damages, claims, causes of action, costs
  and expenses, including but not limited to attorney's fees arising out of or
  due to their action or admissions, or consequences of such actions or
  admissions, to any Entity for any action or inaction taken in good faith, in
  connection with the performance or discharge of his or her duties under this
  Plan, as to any exculpation to the extent permissible under applicable law
  and State Rules of Professional Conduct, except that the Indemnified Parties
  will be liable for actions or inactions that are grossly negligent, fraudulent
  or which constitute willful misconduct (in each case liability shall be subject
  to determination by Final Order of the Bankruptcy Court. However, any act
  or admission taken with the approval of the Bankruptcy Court, and not
  inconsistent therewith, will be conclusively deemed not to constitute gross
  negligence, fraud or willful misconduct, provided that such Bankruptcy
  Court Order was obtained on proper notice, and was not obtained through
  gross negligence, fraud or willful misconduct by such Indemnified Parties).
  In addition, the Liquidating Estate shall, to the fullest extent permitted by
  the laws of the State of New Jersey, indemnify and hold harmless the
  Indemnified Parties, from and against and with respect to any and all
  liabilities, losses, damages, claims, costs and expenses, including but not

Debtor:    Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:    Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

limited to attorney's fees arising out of or due to their actions or admissions or consequences of such actions or admissions with respect to the Liquidating Estate or the implementation or administration of the Plan, if the Indemnified Party act in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Estate. To the extent the Liquidating Estate indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in defense of such claims, giving rise to the right of indemnification, shall be paid as Estate Expenses. All rights of the Persons exculpated and indemnified pursuant hereto, shall survive confirmation of the Plan.

- Article 5.1.1 (f) shall be deemed modified to add the following language:

    "Nothing in this Plan shall be interpreted to limit or expand those remedies."

**WHEREFORE, IT IS HEREBY:**

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Plan, a copy of which is annexed hereto as Exhibit "A", as modified pursuant to the terms and provisions of this Order, and each of its provisions are hereby confirmed under Section 1129 of the Bankruptcy Code. The terms of the Plan and the exhibits attached to the Disclosure Statement filed therewith are incorporated by reference into and are an integral part of this Confirmation Order.

2.    The Debtor, the Committee and the Plan Administrator shall be and are hereby authorized and directed to execute, deliver, file or record all documents and to take all actions necessary or appropriate to implement, effectuate and consummate the Plan, without further application to or Order of this Court. On and after the entry of this Confirmation Order, and subject

Debtor:    Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:    Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

to the occurrence of the Effective Date, the Plan and its provisions shall be binding upon the

Debtors and any holders of a Claim against the Debtor, whether or not the Claim of such Creditors

is impaired under the Plan and whether or not such Creditor has voted, or is deemed to have voted,

for or against the Plan.

3.    On the Effective Date, title to all property of the Debtor's Estate shall revest in the

Liquidating Estate, free and clear of all liens, claims, encumbrances, charges and interest arising

on or before the Confirmation Date. Notwithstanding the foregoing, Allowed Secured Claim of

JPMorgan Chase and the Allowed Superpriority Administrative Claim of JPMorgan Chase, and

all rights granted to JPMorgan Chase under this Court's Final Cash Collateral Order shall attach

to all property vesting in the Reorganized Debtor and shall not be altered or impaired in any

manner. Satisfaction of the J.P. Morgan Claims shall be governed by the Stipulation and Order

dated November 3 , 2017.

4.    Section 1146 Exemption. Pursuant to Bankruptcy Code Sections 1146: (a) the

issuance, transfer, or exchange of notes, Claims or equity securities under the Plan; (b) the creation

or transfer of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or

assignment of any contract, lease or sublease; or (d) the making or delivery of any deed or other

instrument of transfer under, in the furtherance of, or in connection with the Plan will not be subject

to any stamp tax or other similar tax or any tax held to be a stamp tax or other similar tax by

applicable law.

5.    Continuation of Prior Stays and Injunctions. All of the injunctions and/or automatic

stays provided for in or in connection with the Chapter 11 case, whether pursuant to Section 105,

Debtor:    Zucker, Goldberg & Ackerman, LLC

Case no.:    15-24585 CMG

Caption of Order:    Findings of Fact, Conclusions of Law and Order Confirming
Joint Plan of Reorganization

---

Section 362 or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to confirmation, shall remain in full force and effect until a discharge and any other permanent injunctions become effective and thereafter, if so provided by the Plan, this Order, or by their own terms. In addition, all actions in the nature of those to be enjoined by the permanent injunctions contained in the Plan and herein shall be enjoined during the period between the Confirmation Date and the Effective Date. The Debtor, the Committee or the Plan Administrator may seek such furthers Orders as they may deem necessary to preserve the status quo during the time between the Confirmation Date and the Effective Date.

6.    <u>Retention of Jurisdiction</u>. To the extent permissible by applicable law, this Court shall have and retain jurisdiction upon the Effective Date in accordance with the Plan, to, among other things, enforce this Confirmation Order, including but not limited to the Releases and Injunctions contained herein and in the Plan, to adjudicate preserved and retained causes of action delegated to the Plan Administrator and over all other matters arising under, arising out of, or related to the Chapter 11 Case and the Plan in accordance with the provisions of the Plan and Sections 105(a) and 1142 of the Bankruptcy Code.

7.    <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and

Debtor:     Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:   Findings of Fact, Conclusions of Law and Order Confirming
                    Joint Plan of Reorganization

---

are non-severable and are mutually dependent unless expressly stated by further Order of this Court.

8.      Pursuant to Bankruptcy Rule 3020(e), this Confirmation Order shall not be stayed and shall be immediately effective upon entry on the docket of this Court.

9.      The Plan Administrator shall administer the Debtor's Estate in accordance with the Local Rules of Bankruptcy Procedure. After consultation with the Office of the United States Trustee, the Plan Administrator shall serve as the Distribution Agent under this Plan and shall hold funds and disburse funds in accordance with Rule 3021-1 of the Local Rules of Bankruptcy Procedure. Upon the Effective Date of the Plan, Eduardo Glas, Esq. shall assume sole responsibility for the IOLTA Trust Fund maintained by Zucker, Goldberg & Ackerman LLC. and shall administer said IOLTA Trust Fund in accordance with the laws of the State of New Jersey.

10.     The limited objection of 4S Technologies, LLC. ("4ST") to confirmation of the Plan (docket nos. 952 and 969), as well as those raised by 4ST at the hearing on September 15, 2017 (collectively the "4ST Objections"), are deemed withdrawn by 4ST without prejudice. Notwithstanding the withdrawal of the 4ST Objections, all defenses of 4ST to all actions and/or Causes of Action against 4ST be and are hereby preserved and are not deemed impaired as a result of confirmation of the Joint Plan. In addition, confirmation of the Joint Plan shall not impair in any manner the right of 4ST to assert administrative and unsecured claims against the Debtor or the Bankruptcy Estate. All Administrative Claims and Claims of 4ST and all rights, remedies, offsets and defenses which have or may be raised by 4ST against the Debtor, Committee, Plan Administrator, Plan Oversight Committee or the Liquidating Estate are preserved.

Debtor:    Zucker, Goldberg & Ackerman, LLC

Case no.:   15-24585 CMG

Caption of Order:    Findings of Fact, Conclusions of Law and Order Confirming
                     Joint Plan of Reorganization

---

11.    The objections raised on behalf of Michael Ackerman concerning the ability of "Third Party Providers" to assign Claims to the Plan Administrator, under the Plan, are deemed not ripe for resolution by this Court and the objections are therefore overruled. The overruling of the objections by Michael Ackerman shall not be deemed in any manner a substantive ruling on the merits of any potential Claims or any defenses thereto and any such Claims or defenses are preserved.

12.    The objection of JPMorgan Chase, N.A. to Confirmation of the Joint Plan be and is hereby deemed withdrawn and JPMorgan Chase, N.A. be and is hereby deemed to have voted to accept the Joint Plan.

13.    The appointment of Eduardo J. Glas, Esq. as Plan Administrator pursuant to the terms and provisions of the Plan Administrator Agreement and the Plan is hereby approved.

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)
**WASSERMAN, JURISTA & STOLZ, P.C.**
110 Allen Road, Suite 304
Basking Ridge, New Jersey  07920
Phone: (973) 467-2700
Fax: (973) 467-8126
Daniel M. Stolz dstolz@wjslaw.com
*Counsel to Zucker, Goldberg & Ackerman, LLC.,*
*Debtor and Debtor-in-Possession*

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
David J. Adler dadler@mccarter.com
Matthew B. Heimann mheimann@mccarter.com
*Counsel to the Official Committee of Unsecured*
*Creditors*

| | |
|---|---|
| In Re: | Judge:   Christine M. Gravelle |
| **ZUCKER, GOLDBERG & ACKERMAN, LLC.,** | Chapter:  11 |
| Debtor. | Case No.:  15-24585 (CMG) |

## JOINT PLAN OF ORDERLY LIQUIDATION FILED BY
## THE DEBTOR AND THE OFFICIAL COMMITTEE OF
## UNSECURED CREDITORS DATED APRIL 10, 2017 (AS MODIFIED)

The Debtor, Zucker, Goldberg & Ackerman, LLC, and the Official Committee of

Unsecured Creditors,, as Plan Proponents, respectfully submit this Plan of Orderly Liquidation,

pursuant to Chapter 11, Title 11 of the United States Bankruptcy Code, in the form annexed

hereto and made a part hereof.

1

ZUCKER, GOLDBERG & ACKERMAN, LLC,

By: _____

    MICHAEL S. ACKERMAN
    MANAGING MEMBER

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

By: _____

    JIM WARD, PROVEST, LLC
    CHAIRPERSON

Dated: April [], 2017

2

# INTRODUCTION

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, Zucker, Goldberg & Ackerman, LLC., Debtor and Debtor-in-Possession in the above-captioned Chapter 11 Case (the "Debtor"), and the Official Committee of Unsecured Creditors (the "Committee"; collectively "Proponents"), hereby respectfully propose the following Plan of Orderly Liquidation (the "Plan"). Reference is made to the Disclosure Statement dated April ____ 2017, accompanying this Plan, including the exhibits thereto, for a discussion of the Debtor's history, business, results of operations and properties, post-petition events and a summary and analysis of the Plan. All Holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully and consult with their counsel and other applicable professionals before voting to accept or reject the Plan.

The Plan sets forth a proposal for the satisfaction of all Claims against the Debtor. With the Plan, Creditors will receive a Ballot for voting on the Plan, and a Disclosure Statement that provides information concerning the Debtor and the Plan.

The Disclosure Statement includes a summary of the assets and liabilities of the Debtor, a summary of what Creditors and Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.  If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed, or converted to a liquidating case under Chapter 7 of the Bankruptcy Code, or the Debtor, the Creditors Committee or other parties in interest may propose a different plan.

DISCLAIMER

BY SIGNING THIS PLAN AND THE DISCLOSURE STATEMENT BEING FILED HEREWITH, THE CREDITORS COMMITTEE IS NOT ADOPTING, VOUCHING FOR OR ENDORSING ANY OF THE FACTUAL STATEMENTS CONTAINED IN THE PLAN OR DISCLOSURE STATEMENT.  SIMILARLY, BY SIGNING THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT, AS MANAGING MEMBER OF THE DEBTOR, MICHAEL S. ACKERMAN IS NOT WAIVING ANY INDIVIDUAL RIGHTS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO OBJECT TO CONFIRMATION OF THE PLAN OR PROVISIONS CONTAINED THEREIN.

3

ME1 24569800v.2

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### *1.1.    Rules of Interpretation, Computation of Time and Governing Law*

1.1.1. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have' been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to part includes the whole, except where the context clearly requires otherwise; (g) "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.1.2.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1.3.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws thereof.

### *1.2.    Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.      "Accounts Receivables" or "Receivables" means, collectively and individually, as applicable, all unpaid invoices for legal services rendered or expenses incurred by the Debtor on behalf of its clients.

2.      "Ackerman Parties" shall mean any Relatives, Affiliates or Insiders of MSA.

4

3.      "Administrative Claim" means a Claim for costs and expenses of administration under Section 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Claims Bar Date; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

4.      "Administrative Claims Bar Date" means collectively (i) the last date set by the Bankruptcy Court pursuant to an Administrative Claims Bar Date Order for a Claimant to file a request for payment of any Administrative Claim that arose between the Petition Date and the Effective Date of the Plan, or any claim for the value of any goods received by the Debtor within twenty (20) days before the Petition Date in which the goods were sold to the Debtor in the ordinary course of the Debtor's business.

5.      "Administrative Claims Bar Date Order" means any order or orders setting any Administrative Claims Bar Date, which order could be the Confirmation Order.

6.      "Affiliate" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

7.      "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which Debtor or other party in interest has not Filed an objection on or before the 365th day after the Effective Date; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been Filed; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Plan Administrator on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Claim or Priority Tax Claim executed by (x) the Debtor and approved by the Bankruptcy Court, or (y) the Plan Administrator; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtor in connection with and in. accordance with, the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely Filed by the Claimant before the applicable Rejection Bar Date (as defined in Article 8.2 of this Plan) for such claim or has otherwise been deemed, timely Filed under applicable law; or (f) a Claim that is Allowed pursuant to the terms of this Plan.

8.      "Allowed Claim" means a Claim that has been Allowed.

5

ME1 24569800v.2

9.    "Assets" means all property that is property of the Debtor and that Debtor's estate under Section 541 of the Bankruptcy Code of every kind and character, whether such property is now existing or hereafter arising or acquired, wherever located and whether real, personal, tangible or intangible including, without limitation, all Cash, Accounts Receivable, and proceeds thereof to which the Estate is entitled to, all work in progress amounts, Causes of Action, Insurance Policies and all proceeds of and recoveries on Causes of Action, tax refunds, and Unclaimed Escrow Funds, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, interest in real estate. including, without limitation, all property and other interests identified in Section 541(a) of the Bankruptcy Code.

10.    "Attorney Trust Accounts" shall mean those segregated bank accounts of the Debtor established and maintained pursuant to applicable law.

11.    "Attorney Trust Accounts Records" shall mean all records and recordkeeping requirements required to be maintained for Attorney Trust Accounts as set forth under NJ Court Rule 1:21 (or other applicable law).

12.    "Available Cash" means the aggregate amount of Cash held by the Debtor on the Effective Date.

13.    "Avoidance Actions" mean all claims and, causes of action which the Debtor has or, had the power to assert pursuant to any or all of Sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

14.    "Ballot Date" means the date stated in the Voting Instructions by which all Ballots must be received, which date shall be [May 17, 2017] at [5]:00 p.m.

15.    "Ballots' mean the ballots upon which Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

16.    "Bankruptcy Case" means the Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code. Pending in the Bankruptcy Court and administered under Case No. 15-24585 (CMG).

17.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, as codified in title 11 of the United States Code and applicable portions of titles 18 and 28 of the United States Code.

18.    "Bankruptcy Court" means the United States District Court for the District of New Jersey having jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of such District Court pursuant to Section 151 of title 28 of the United States Code, the bankruptcy unit of such District Court.

6

ME1 24569800v.2

19.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Bankruptcy Case promulgated under 28 U.S.C. §2075 and the General, and Local Rules of the Bankruptcy Court.

20.   "Bar Date" means the dates established pursuant to Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines [ECF Doc. #22].

21.   "Books and Records" means any and all books and records, including computer generated or computer maintained books and record, as well as electronically generated, stored, or maintained books and records, data or information, along with books and records of the Debtor maintained by or in the possession of third parties,  wherever located.

22.   "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

23.   "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

24.   "Causes of Action" means all of the Debtor's and the Estate's causes of action, claims, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Cases, through and including the Effective Date, including, but not limited to, the Avoidance Actions, causes of action against any former officer, director, partner or member of the Debtor's, and whether asserted or assertable directly or derivatively, in contract or in tort, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.

25.   "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against Debtor, including, but not limited to: (a) any right to payment from Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal,' equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

26.   "Claim Against the Attorney Trust Accounts" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Attorney Trust Accounts.

27.   "Claimant" means the Holder of a Claim against the Debtor.

28.   "Claims Objection Bar Date" means, unless otherwise extended by Order of the Court, one year after the Effective Date.

7

29.    "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 3 of the Plan.

30.    "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Bankruptcy Case pursuant to section 1102 of Bankruptcy Code.

31.    "Confirmation" means the entry of the Confirmation Order, subject to the conditions specified in Article IX of this Plan.

32.    "Confirmation Date" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021.

33.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan in accordance with Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

34.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Committee.

35.    "Consummation" or "Consummate" means the occurrence of the Effective Date.

36.    "Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

37.    "Creditor" means any Holder of a Claim against Debtor against the Debtor or the Estate.

38.    "Debt" means liability on a Claim.

39.    "Debtor" or "Debtor in Possession" means Zucker, Goldberg & Ackerman, LLC., as debtor and debtor in possession in this Chapter 11 Case pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

40.    "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules, and as to which no proof of Claim has been timely filed or, deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

41.    "Disclosure Statement" means the disclosure statement datedMarch 9,, 2017 (including all exhibits and schedules thereto),  as amended, supplemented, or modified, from

8

time to time, describing the Plan that was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

42.    "Disclosure Statement Approval Order" means the Final Order approving, among other things, the adequacy of the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code.

43.    "Disputed" means with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which, to object to such Claim has not yet expired.

44.    "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed. after the applicable Bar Date for such Claim; (iii) any Contingent Claim or Unliquidated Claim; (iv) any Claim scheduled by the Debtor in the Schedules as disputed, contingent or unliquidated; (v) a Proof of Claim filed in a greater amount, or of a different nature or priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (vi) a Claim that is not listed in the Schedules. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed Allowed as to the portion for which no objection is made.

45.    "Disputed Claims Amount" means the aggregate amount of Disputed Claims that are fixed and absolute. For purposes of calculating distributions of Cash under the Plan, the amount of each Disputed Claim shall be based upon either: (i) the face amount of such Creditor's Disputed Claim (or the disputed portion thereof) as set forth in the Creditor's filed proof of Claim; (ii) the amount at which the Bankruptcy Court may estimate such Disputed Claim; or (iii) the amount which the Plan Administrator determines in its reasonable judgment is the appropriate amount to be reserved for such Disputed Claim.

46.    "Distribution" means any distribution made pursuant to the terms of this Plan.

47.    "Distribution Date" means a date on which a Distribution occurs.

48.    "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

49.    "Effective Date" means the Business Day following the Confirmation Date on which all conditions to consummation to the Plan shall have been satisfied or waiver as provided in Article 9.2 hereof.

9

ME1 24569800v.2

50.   "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code.

51.   "Equity Interest" means any equity interest in Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants; options or contract rights to purchase or acquire such interests at any time. ? delete because of Interests

52.   "Estate" means the estate of the Debtor in this Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

53.   "Estate Assets" shall have the meaning set forth in Section 541 of the Bankruptcy Code.

54.   "Examiner" shall mean former Judge Donald H. Steckroth, who was appointed by Order entered on February 8, 2016, to investigate and report on certain claims potentially held by the Bankruptcy Estate against 4ST and MSA.

55.   "Examiner's Report" shall mean the Report filed by the Examiner on November 8, 2016 and all attachments and supplements thereto, attached to the Disclosure Statement as Exhibit "B" (ECF Doc. #688).

56.   "Exculpated Parties" shall have the meaning set forth in Article 10.3 of the Plan.

57.   "File" or "Filed" means file or filed with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

58.   "File Abandonment Protocol" means those certain procedures approved by order of the Bankruptcy Court dated December 28, 2015 (ECF Doc. #320) concerning disposition of certain client files by the Debtor maintained at Access Information.

59.   "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

60.   "Final Distribution Date" means the date of the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

61.   "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

62.   "Final Resolution Date" means the date on which all Disputed Claims in each and every Class shall have been resolved by Final Order or otherwise finally determined.

63.   "4ST" shall mean 4S Technologies, LLC.

10

ME1 24569800v.2

64.    "General Unsecured Claims" means any Claim that is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim or Subordinated Claim.

65.    "Governmental Unit" means the United States and any state, commonwealth, district, territory, municipality, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), or any foreign state.

66.    "Holder" means an Entity holding a Claim or Equity Interest.

67.    "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

68.    "Insider" means an insider of any Debtor, as defined in Section 101(31) of the Bankruptcy Code.

69.    "Insurance Policies" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its Employees, Partners or any other Person other than Malpractice Policies.

70.    "Interim Fee Order" shall mean Orders entered by the Court awarding interim fees to professionals.

71.    "Interest" means any share of common stock, preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date.

72.    "IRC" means the Internal Revenue Code of 1986, as amended.

73.    "IRS" means the Internal Revenue Service of the United States Department of Treasury.

74.    "Liability Amount" means the amount due to the Debtor or its Estate by a Person on account of a Cause of Action.

75.    "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind) to secure, payment of a debt or performance of an obligation.

76.    "Liquidating Estate" means the Assets of the Estate as of the Effective Date of this Plan.

11

77.    "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtor or the Plan Administrator, as applicable, upon the sale, transfer, assignment or other disposition of Assets.

78.    "Litigation" means the interest of the Estate or the Liquidating Estate, as applicable, in any and all Claims, rights and Causes of Action which have been or may be commenced by the Debtor or the Committee or the Plan Administrator.  For the avoidance of doubt, Litigation does not include the Third Party Provider Claims.

79.    "Litigation Recoveries" means any Cash or other property received by the Debtor or the Plan Administrator, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise but does not include recoveries on account of Third Party Provider Claims. If any Litigation is pursued on a contingent fee basis, the Litigation Recovery will be net of any fees of legal counsel and related expenses .

80.    "MSA" shall mean Michael S. Ackerman, Managing Member of the Debtor and 4ST.

81.    "Net Estate Assets" means all Estate Assets after the deduction of amounts to be paid for, Administrative Claims, Priority Claims and amount deposited to any reserve accounts from any unencumbered Cash on account of, or in anticipation of, payment of Estate Expenses and, as to each Holder of an Allowed Claim, other than Secured Claims, after deduction of amounts for payments made or to be made (or for deposits made or to be made into the Claims Reserve Account on account of Disputed Claims) with respect to Claims (including unclassified claims that are Administrative Claims and Priority Tax Claims) that are senior in priority to the Claims of such Class but does not include Third Party Provider Recoveries.

82.    "Noticing and Balloting Agent" shall mean BMC Group, Inc.

83.    "Objection Deadline" means the date established by the Bankruptcy Court for the filing of any objection to the Plan.

84.    "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

85.    "Petition Date" means August 3, 2015.

86.    "Plan" means this Plan of Liquidation, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

12

ME1 24569800v.2

87.    "Plan Administrator" shall mean Eduardo J. Glas or such other person as may be agreed upon by the Debtor and the Committee in the event he is unable to serve as Plan Administrator.

88.    "Plan Administrator Agreement" shall mean the Plan Administrator Agreement attached to the Disclosure Statement as Exhibit "C".

89.    "Plan Interest Rate" means the rate of interest determined by the Bankruptcy Court upon Confirmation, if necessary, for purposes of the application of Section 1124 (impairment) or Section 1129(b) of the Bankruptcy Code (Present Value), as the case may be, to the distributions to certain Creditors under the Plan. The Plan Interest Rate may be different for different Classes of Claims.

90.    "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

91.    "Plan Oversight Committee" shall have the meaning set forth in Article 5.1.4. of this Plan.

92.    "Plan Supplement" means any pleading filed by the Debtor and the Committee so titled and filed with the Bankruptcy Court at least ten (10) business days prior to the initially scheduled date of the Confirmation Hearing, which may include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

93.    "Post Confirmation Expenses" means the expenses incurred by the Plan Administrator following the Effective Date (including the fees and costs of attorneys and other professionals and any other costs incurred in connection with the liquidation of the Estate) for the purpose of: (i) prosecuting or otherwise attempting to collect or realize upon the Litigation; (ii) selling or collecting upon any of the Estate Assets or otherwise incurred following the Effective Date in connection with generating the Liquidation Proceeds; (iii) resolving Disputed Claims and effectuating distributions to Creditors under the Plan; (iv) revenue from the Debtor's operations pending liquidation of the Estate Assets or (v) otherwise implementing the Plan and closing the Chapter 11 Case, including, but not limited to post-Effective Date taxes, if any (such as for income, if any, in the Disputed Claims Reserve) and wind-down expenses (such as document storage and final tax returns) and the cost of any bond or insurance obtained for the protection of the Plan Administrator, but specifically excluding those fees and expenses related to pursuit of Third Party Provider Claims.  NOTE This definition needs to be harmonized with Section 2.4 which permits the Plan Administrator to establish a reserve "to appropriately perform his duties".

94.    "Present Value" means the present value as of 'the Effective Date of Cash payments made under the Plan by the Debtor using the Plan Interest Rate.

95.    "Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code

13

excluding Claims entitled to priority under Bankruptcy Code subsections 507(a)(1) and 507(a)(8).

96.    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

97.    "Privilege" means all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtor, including the Debtor's attorney-client privilege with the Debtor's former clients, as well as any rights and obligations of the Debtors, the Estates, or the Committee under any confidentiality agreement, protective order, joint or common interest agreement or similar agreement.

98.    "Pro Rata" means, in connection with a particular Allowed Claim and in connection with any Distribution, the ratio between the amount of such Allowed Claim and the aggregate amount of all Allowed Claims in such Class or Classes entitled to such Distribution.

99.    "Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with. Sections 327 and 1103 of the Bankruptcy Code and to be compensated for, services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

100.    "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

101.    "Professional Fee Bar Date" means the date that is seventy-five (75) days after the Effective Date pursuant to which all Professionals must file applications for final allowance of compensation and reimbursement of expenses.

102.    "Proof of Claim" means a proof of claim Filed pursuant to Section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

103.    "Receivables" means, collectively and individually, as applicable, all unpaid invoices for legal services rendered or expenses incurred by the Debtor on behalf of its clients.

104.    "Related Person" means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise), and with respect to any of the foregoing, their respective present and former Affiliates and each of their respective current and former members, partners, shareholders, equity-holders, officers, directors, employees, managers, trustees, trust beneficiaries, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, or other representatives.

105.    "Relative" shall have the meaning set forth in Section 101(45) of the Bankruptcy Code.

106.    "Scheduled Claim" means a Claim that is listed by the Debtor in its  Schedules.

14

ME1 24569800v.2

107.    "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code; the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and Debtor's statement of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtor to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

108.    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

109.    "Subordinated Insider Claim" shall mean any Claim of an Insider that is subordinated under applicable law.

110.    "Tax" or "Taxes" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

111.    "Tax Authority" means any federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, or court, or other body (if any) charged with the administration of any law relating to Taxes.

112.    "Tax Claim" means a Priority Tax Claim.

113.    "Tax Return" means any return, declaration, form, election letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof.

114.    "Third Party Providers" means those providers of trade services to the Debtor, whose invoices were specifically itemized on the Debtor's invoices to its clients or whose services were paid in connections with the closing of real estate transfers.

115.    "Third Party Provider Claim" means a Claim of a Third Party Provider against Persons other than that Debtor which seeks to impose liability against that Person as a result of misconduct of the Debtor (including, but not limited to, the claim that the Debtor should have held certain payments received for services provided by the Third Party Providers in the Attorney Trust Account or disbursed payments directly to the Third Party Provider).

116.    "Third Party Provider Election Form" or "Third Party Provider Power of Attorney" means an election to be made by a Third Party Provider which authorizes the Plan Administrator to commence a Third Party Provider Claim in the name of the Third Party Provider.  The Third

ME1 24569800v.2

Party Provider Election Form (which shall be filed as part of the Plan Supplement) will provide that any net proceeds recovered from such litigation will be shared pro rata among the General Unsecured Claims.

117.    "Third Party Provider Recoveries" means any recoveries from claims asserted by Third Party Providers who have executed a Third Party Provider Election Form, net of fees, expenses and costs associated with such recoveries.

118.    "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

119.    "Unclaimed Distribution" means any Distribution together with interest earned or payable thereon, if any, after the applicable Distribution Date, unclaimed after six (6) months following any Distribution Date. Unclaimed Distributions shall include, without limitation: (i) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (ii) funds representing checks which have not been paid; and (iii) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a correct address.

120.    "Unliquidated Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

121.    "Unsecured Claim" means any General Unsecured Claim. .

122.    "U.S. Trustee" means, the Office of the United States Trustee for Region 3.

123.    "Voting Deadline" means the deadline established by the Bankruptcy Court for returning Ballots.

124.    "Voting Instructions" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

125.    "Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a); this date, is the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

### 1.3.    *Exhibits and Plan Supplement*

All Exhibits, as well as the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits and the Plan Supplement shall be timely filed in accordance with the Plan. Holders of Claims and Interests may obtain a copy of the filed Exhibits and Plan Supplement upon written request to the Proponent. Upon their filing, the Exhibits and Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours. The documents

16

contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

### 1.4.    Deemed Acts

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred, without any further act by any party, by virtue of the Plan and the Confirmation Order.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL
## FEES AND PRIORITY TAX CLAIMS

### 2.1.    Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following Claims in a Class:

### 2.2.    Administrative Claims

Each Holder of an Allowed Administrative Claim shall receive, from Net Estate Assets, without interest, Cash equal to the Allowed amount of such Claim, unless such Holder shall have agreed to different treatment of such Claim, at the sole option of the Debtor or the Plan Administrator, as the case may be: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holders of such Claims and the Debtor or the Plan Administrator, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), until the entry of a Final Decree or an order converting or dismissing the case.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims that are required to be Filed and not Filed by the Administrative Claim Bar Date shall be deemed disallowed and discharged. As provided herein, the Claims Reserve Account will include funds sufficient to cover the aggregate asserted amount of all disputed Administrative Claims. Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

### 2.3.    Professional Fee Claims

The Plan Administrator shall pay Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing,

17

service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date.

The Bankruptcy Court must rule on and allow all Professional Fee Claims before the fees will be owed and paid. For all Pre-Effective Date Professional Fee Claims, except fees owed to the Clerk of the Bankruptcy Court, the fees and expenses of the Noticing and Balloting Agent, and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed final fee application by the Professional Fee Bar Date and the Bankruptcy Court must rule on the application. Only the allowed and unpaid fees and expenses of Professionals will be required to be paid under the Plan.

All parties seeking payment of Professional Fee Claims arising prior to the Effective Date must file with the Bankruptcy Court and serve upon the Plan Administrator, a final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code, as applicable, on or before the Professional Fee Bar Date.

### 2.4.    Priority of Administrative Claims, Professional Fee Claims and Post Confirmation Expenses

Allowed Administrative Claims (including Allowed Professional Fee Claims) and Post Confirmation Expenses shall have equal priority with regard to distribution of Net Estate Assets. After the satisfaction of the Allowed Secured Claim of JPMorgan Chase and appropriate reserves to assure that the Plan Administrator can appropriately perform his duties, the Net Estate Assets shall be distributed on a Pro Rata basis to Holders of Allowed Professional Fees, Holders of Allowed Administrative Expense Claims and in payment of Post-Confirmation Expenses, until all such amounts have been paid in full.

### 2.5.    Priority Tax Claims

On the later to occur of (i) the Effective Date or (ii) the date on which such Claim shall become an Allowed Claim, and (iii) payment in full of Administrative Claims, Professional Fee Claims and Post-Confirmation Expenses, the Plan Administrator shall pay to each Holder of an Allowed Priority Tax Claim from the Net Estate Assets, the Allowed amount of such Allowed Priority Tax Claim without interest from Petition Date.

### 2.6.    Claims Against Attorney Trust Account

The Plan does not seek to classify or treat claims by any Person against the Attorney Trust Accounts.

18

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 3.1.  *Summary*

The categories of Claims and  Interests listed below classify Claims, and  Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or  Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or  Interest qualifies within the description of such different Class. A Claim or  Interest is in a particular Class only to the extent that such Claim or  Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### 3.2.  *Classification and Treatment of Claims against the Debtor*

The classification of Claims and Interests against the Debtor pursuant to the Plan, is as follows:

| Summary of Classification and Treatment of Classified Claims and Equity Interests | | | |
|---|---|---|---|
| Class | Claim | Status | Voting Rights |
| 1 | Priority Claims | Impaired | Entitled to Vote |
| 2 | Secured Claims | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Interests | Impaired | Deemed to reject |

### 3.2.1.  *Class 1-Priority Claims*

(a)     Classification: Class 1 consists of the Priority Claims against the Debtor.

(b)     Treatment: All Allowed Class 1 Claims creditors in Class 1 shall be paid in full as soon as practicable following the later of: (a) the Effective Date, (b) the date such Class 1 Priority Claim becomes an Allowed Claim (or as otherwise permitted by law) and the payment in full of the secured claim of J.P. Morgan Chase and all Administrative Claims. The Plan Administrator shall pay each Entity holding a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; provided, however, that such individual or Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

(c)     Voting: Class 1 is Impaired Class and Holders of Class 1 shall have a right to vote to accept or reject the Plan.

### 3.2.2.  Class 2 - Secured Claims

(a)     Classification: Class 2 consists of Secured Claims against any of the Debtors.

19

ME1 24569800v.2

(b)      Treatment: All Creditors in Class 2 holding Allowed Secured Claims will be paid in full, except to the extent that a Holder of an Allowed Secured Claim agrees to a different treatment, on the later of the Effective Date or within thirty (30) days of the Claim becoming Allowed, each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction of such Claim, Cash in full payment of the Allowed Secured Claim; or such other treatment required under Section 1124(2) of the Bankruptcy Code for such Claim to be rendered Unimpaired or agreed upon by the Debtor, the Committee and the Secured Creditor.

(c)      Voting: Class 2 is an Impaired Class and shall have the right to vote to accept or reject the Plan.  Claimholders in this class shall retain their liens on their collateral.

### 3.2.3.  Class 3 - General Unsecured Claims

(a)      Classification: Class 3 consists of the Claims of Holders of General Unsecured Claims.

(b)      Treatment: Each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the Net Estate Assets following the payment in full of all Allowed Administrative and Priority Claims and claimants in Class 1 and 2.  In addition, each holder of an Allowed General Unsecured Clam shall receive a Pro Rata share of any Third Party Provider Recoveries.

Class 3 General Unsecured Claims are subject to all statutory, equitable and contractual subordination claims, rights and grounds available to the Debtor, the Estates and pursuant to this Plan, the Plan Administrator, which subordination claims, rights and grounds are fully enforceable prior to, on and after the Effective Date.

(c)      Voting: Class 3 is an Impaired Class and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### 3.2.4.  Class 4 - Equity Interests

a. Classification:

Class 4 consists of all Interests in the Debtor.

b. Treatment:

Upon the Effective Date, the Interests will be deemed canceled and will cease to exist.

c. Voting:

Holders of Class 4 Interests is an impaired class and  are deemed to reject the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

### *4.1.    Voting Classes*

Each Holder of an Allowed Claim in Classes 1, 2 and 3 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

### *4.2.    Acceptance by Impaired Classes*

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### *4.3.    Nonconsensual Confirmation*

In the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event the Plan Proponents reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

### *4.4.    How to Vote*

A form of Ballot is being provided to Creditors in Classes 1, 2 and 3 by which Creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan -- you can vote for or against this Plan. To vote on the .Plan, please complete the Ballot, as indicated thereon by, (1) indicating on the enclosed, ballot that (a) you accept the Plan or (b) reject the Plan and (2) signing your name and mailing the ballot in the envelope provided for this purpose. The Claims Agent will count the Ballots.

IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN 4:00 P.M. EASTERN TIME ON _____, 2017 AT THE FOLLOWING ADDRESS:

By First Class Mail:
BMC Group
Attn:  ZGA Ballot Processing
PO Box 90100
Los Angeles, CA  90009

By Overnight or Hand Delivery:

BMC Group

21

ME1 24569800v.2

Attn: ZGA Ballot Processing
300 N. Continental Blvd., #570
El Segundo, CA  90245

DO NOT SEND YOUR BALLOT VIA FACSIMILE OR E-MAIL.

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE. FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1.    *Appointment of Plan Administrator*

The Confirmation Order shall provide for the appointment of the Plan Administrator who shall be the "representative of the estate" as that phrase is used in section 1123(b)(3)(B) of the Bankruptcy Code.  The Plan Administrator shall exclusively enforce and liquidate any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Debtor and the Holders of Allowed Claims, including any and all Causes of Action that were or could have been commenced by the Debtor or the Estate prior to the Effective Date and shall be deemed substituted for the same as the party in such action.  All Causes of Actions, Claims, rights or interests of the Estate are preserved and retained and may be enforced by the Plan Administrator as the representative of the Debtor and/or the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Plan Administrator shall be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction and shall be the only party to have standing to file, prosecute, settle, or compromise all Assets of the Liquidating Estate, including all Causes of Action and Claims. The Plan Administrator shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and causes of action without the consent or approval of any third party and without any further order of the Bankruptcy Court or any other court (subject to Notice to the Oversight Committee and counsel for the Debtor and the right of unpaid administrative claimants and creditors to object and bring the issue before the Bankruptcy Court, as appropriate).  The Plan Administrator will file on the electronic docket of the Bankruptcy Case a status report nine (9) months after his appointment on the Effective Date and every 9 months thereafter until the Case is closed.

### 5.1.1.  *General Powers, Rights and Responsibilities of Plan Administrator*

The powers, rights, and responsibilities of the Plan Administrator are set forth in the Plan Administrator Agreement and shall include, but not be limited to, the following:

(a)    The Plan Administrator shall administer all of the dissolution and wind-down activities of the Debtor and its Estate.

22

(b)     The Plan Administrator shall have the power and authority to (i) collect and liquidate the Estate Assets, (ii) assert, prosecute, pursue, compromise and settle in accordance with the Plan Administrator's reasonable business judgment, all Claims, Causes of Action, including the Avoidance Actions and Causes of Actions against the Ackerman Parties, and assert and enforce all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including without limitation, setoff, recoupment and any rights under Bankruptcy Code section 502(d), (iii) object to Disputed Claims, in accordance with the Plan Administrator's reasonable business judgment, and (iv) take all other actions required under the Plan to complete the dissolution and wind-down of the Debtor under the applicable non-bankruptcy law and in accordance with the Plan.

(c)     The Plan Administrator shall be authorized to negotiate, resolve and enter into settlements on all matters affecting the Estate, including, without limitation, Receivables, Disputed Claims, and/or other Causes of Action.

(d)     The Plan Administrator shall be authorized to take such actions as he or she deems appropriate in the Plan Administrator's reasonable business judgment against any Person with respect to a Cause of Action.

(e)     The Plan Administrator shall be authorized to employ all discovery devices permitted under applicable law, including Federal Rule of Bankruptcy Procedure 2004, in order to investigate any Causes of Action.

(f)     The Plan Administrator shall be authorized to commence a proceeding against any Person (including 4ST) seeking, among other things: (i) a determination that such Person is the alter ego of the Debtor; (ii) to pierce the corporate veil of such Person.  In pursuing such claims, the Plan Administrator shall be authorized to seek any remedy that may be permitted by law.  Nothing in this Plan shall be interpreted to limit or expand those remedies.

(g)     The Plan Administrator shall be authorized to prepare any Accountings and disburse the Attorney Trust Fund Accounts.

(h)     The Plan Administrator shall be authorized to enter into a settlement with any Party upon terms and conditions which he or she deems appropriate in the Plan Administrator's reasonable business judgment.

(i)     The Plan Administrator may employ, without further order of the Bankruptcy Court, Professionals to assist it in carrying out its duties hereunder, including the Plan Administrator's own law firm, former counsel to the Debtor and/or the Creditors' Committee, and may compensate and reimburse the expenses of those Professionals without further order of the Bankruptcy Court.

(j)     The Plan Administrator may collect the proceeds of the Receivables and may retain one or more collection agents, who will continue to pursue collections after the Effective Date.

23

ME1 24569800v.2

(k)    The Plan Administrator shall be authorized to abandon property of the Estate where he or she deems appropriate in the Plan Administrator's reasonable business judgment; including completing the disposition of client files and records of the Debtor and its Estate in accordance with the File Abandonment Protocol and applicable law.

(l)    The Plan Administrator shall be authorized to file Tax Returns for the Debtor.

(m)    The Plan Administrator shall be authorized to seek the estimation of Contingent or Unliquidated Claim against the Debtor under section 502(c) of the Bankruptcy Code.

(n)    The Plan Administrator shall be authorized to exercise all powers and rights, and taking all actions, contemplated by or provided for in the Plan Administrator Agreement.

(o)    The Plan Administrator shall be authorized to take any and all other actions necessary or appropriate to implement or consummate the Plan and the provisions of the Plan Administrator Agreement

### 5.1.2.  Retention of Professionals

The Plan Administrator may retain professionals of his choosing (including Professionals employed by the Debtor, the Examiner or the Committee) and pay such professionals in the ordinary course for services rendered following the Effective Date without order of the Bankruptcy Court, subject to the provisions of Article 2.4 of this Plan.  Such post-Effective Date professionals shall provide the Plan Administrator with monthly, detailed invoices in respect of their services and expenses, which may be paid by the Plan Administrator without Bankruptcy Court approval subject to the procedures set forth in the Plan Administrator Agreement and Article 2.4 of this Plan. Notwithstanding the foregoing, if the Plan Administrator or another Party objects in writing to the payment of any compensation, such disputed amount shall not be paid prior to the earlier of the resolution of such dispute or a ruling by the Bankruptcy Court.

### 5.1.3.  Compensation Of The Plan Administrator

The Plan Administrator shall be compensated for his services in the following manner. For services performed in his capacity as Plan Administrator, Eduardo Glas shall be compensated at the rate of $350/hour. The Plan Administrator shall also be entitled to reimbursement of all of his reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this Agreement, including telephone, travel, facsimile, courier, postage, and other similar out-of-pocket expenses.

If Eduardo Glas retains his law firm (Tseitlin & Glas) to pursue Avoidance Actions against non-insiders, the Plan Administrator's law firm shall be compensated at a rate of 20% of any recoveries obtained plus reimbursements of expenses.  To the extent that there are any pending Avoidance Actions that are close to settlement as of the Effective Date, the Plan

ME1 24569800v.2

Administrator shall refrain from substituting counsel unless the settlement discussions do not result in a settlement within a reasonable time after the Effective Date. If Eduardo Glas retains his law firm to pursue Avoidance Actions against Insiders (or any other claims, including those identified in the Examiner's Report), the Plan Administrator's law firm shall be compensated at a rate of 30% of any recoveries obtained plus reimbursements of expenses. These retention terms are to be approved by the Bankruptcy Court in the Confirmation Order.

### 5.1.4. Insurance

The Plan Administrator shall be authorized to obtain all reasonably necessary insurance coverage for itself, its agents, representatives, employees, or independent contractors, including, but not limited to, coverage with respect to the liabilities, duties, and obligations of the Plan Administrator and its agents, representatives, employees, or independent contractors under the Plan Administrator Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Plan Administrator, remain in effect for a reasonable period.

### 5.1.5 Authority To Object To Claims And Interests And To Settle Disputed Claims

From and after the Effective Date, the Plan Administrator, on behalf of the Debtor, shall be authorized, with respect to those Claims or Interests which are not Allowed hereunder or by Court order, to object to any Claims or Interests filed against any of the Debtor's Estate and pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, to compromise and settle Disputed Claims against the Debtor's Estate.

### 5.1.6. Appointment of Plan Oversight Committee

On the Effective Date of the Plan, the Plan Oversight Committee shall be appointed which shall consist of three (3) members of the Committee. The Plan Oversight Committee shall monitor the activities of the Plan Administrator, including reviewing the fees of any Professionals retained, and advise the Plan Administrator where appropriate on other matters. The Plan Administrator shall not be required to obtain the Consent of the Plan Oversight Committee before taking action or consummating agreements. To the extent that the Plan Oversight Committee disagrees with an action or an agreement entered into by the Plan Administrator, it shall have standing to bring before the Court any objections to the activities of the Plan Administrator. The Plan Oversight Committee shall have the right to retain counsel, who shall be compensated solely for services relating to advising the Plan Oversight Committee and bringing any objections to the activities of the Plan Administrator before the Court.

### 5.1.7. Conflicts of Interest

Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of his duties under the Plan Administrator Agreement, the issue shall first be brought to the attention of the United States Trustee and thereafter brought before the Bankruptcy Court for resolution.

25

### 5.2.  Execution of Documents to Effectuate Plan

Prior to the Confirmation Date, the Debtor shall execute any instruments or documents that are necessary to effectuate the provisions of the Plan.  Secured Creditors and all other necessary parties shall execute or deliver, or join in the execution and delivery, of any instrument required to effect a transfer of property under the Plan, and shall perform any other act, including the satisfaction, release or assignment of any lien that is necessary for the consummation of the Plan.  From and after the Confirmation Date, the Plan Administrator shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan.

### 5.3.  Authorization of Debtor's Action

Entry of the Confirmation Order shall authorize the Plan Administrator to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred 'and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtor is chartered, organized or incorporated, without any requirement of further action by the directors and stockholders of the Debtor.

### 5.4.  Dissolution of Committee

The Committee shall continue in existence through and including the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code Section 1103 and shall perform such other duties as it may have been assigned by the Bankruptcy Court or in this Plan or the Confirmation Order prior to the Effective Date. On the Effective Date, the Committee shall be deemed dissolved, and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Bankruptcy Cases or the Plan and its implementation, and the retention or employment of the Committee's Professionals shall terminate, except with respect to any Claim for Professional Fee Claim.

### 5.5  Books and Records

On the Effective Date, the Debtor's Books and Records, in any form, including all electronic records, shall be made available to the Liquidating Estate who shall be deemed the owner of such Books and Records. To the extent applicable, the Plan Administrator shall continue to be bound by the terms of the File Abandonment Protocol. Except as otherwise provided, the Plan Administrator  shall be permitted, in his discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable non-bankruptcy law, provided, however, that, in the Plan Administrator's discretion, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any

26

applicable laws, rules, or regulations that would have required the Debtor to retain such books and records. Further, the Plan Administrator Trustee shall preserve and maintain all documents, data and information responsive to any subpoena, litigation hold, or discovery request to which the Debtors are subject on or after the Effective Date.

### 5.6.    *Privileges of the Debtor*

All Privileges of the Debtor shall revest in the Liquidating Estate without waiver or release. The Plan Administrator shall hold and be the beneficiary of such Privileges and be entitled to assert all Privileges.

### 5.7.    *Privileges of Former Clients*

Nothing in the Plan shall affect or impair any former client's rights with respect to privileged and/or confidential documents. To the extent that any privileged documents or information remain in the Liquidating Estate's possession after the Effective Date, the Plan Administrator must obtain the consent, in writing, of any affected former clients prior to the transfer of such information and documents to any third party, and nothing in the Plan shall affect the right of any former client to request that the Plan Administrator return any privileged and/or confidential documents in his or her possession upon written request by a former client.

### 5.8.    *Debtor's Pre-Effective Date Operations*

During the period prior to the Effective Date, the Debtor shall continue to wind-down its business, including, but not limited to, paying normal operating expenses, preparing and filing tax returns and statements, collecting accounts receivable and filing U.S. Trustee reports, as a debtor in possession with the authority granted under sections 1107 and 1108 of the Bankruptcy Code and subject only to those restrictions imposed upon the Debtor pursuant to the Bankruptcy Code, the Bankruptcy Rules, orders of the Court and this Plan. In addition, the Debtor will continue to comply with its ethical obligations in accordance with applicable law.

### 5.9.    *United States Trustee's Fees*

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date. Thereafter, the Plan Administrator shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the case.

### 5.10.    *Administrative Claims Bar Date*

Any Claimant failing to file and serve an Administrative Claim on or before the Administrative Claims Bar Date as required by Section 2.1 of this Plan shall be forever barred from asserting any such right to payment as against the Debtor and/or the Estate.

### 5.11.    *Continued Existence of Debtor Until Closing of the Case*

Following the Effective Date, the Debtor shall continue in existence for the purposes of, among other things, completing the liquidation of its assets, winding up its affairs and filing appropriate tax returns, and shall thereafter be dissolved at the discretion of the Plan Administrator. No later than upon the entry of an order closing this Bankruptcy Case, the Debtor shall be deemed dissolved for all purposes and the Plan Administrator shall file a certificate of dissolution with the appropriate state agencies.

27

*5.12.    Closing Case*

After the Debtor's Estate has been fully administered, the Plan Administrator shall file the final account and report with the Bankruptcy Court. At such time, the Plan Administrator shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Cases pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

### 5.13    *Setoff Against Attorney Trust Account*

Following the Effective Date,  the Plan Administrator, subject to Court Order, may holdback any distributions to Parties from the Attorney Trust Accounts for potential offsets on account of amounts that may be owed to the Debtor, including for unpaid legal fees and/or disbursements, from parties asserting an interest in the funds in the Attorney Trust Accounts.

### ARTICLE VI

### PROVISIONS REGARDING DISTRIBUTIONS

### *6.1.    Manner of Payment under the Plan*

At the option of the Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. Cash payments made pursuant to this Plan in the form of checks issued by the Plan Administrator shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Plan Administrator.

### *6.2.    Timing of Distributions*

Except as otherwise agreed by the Holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Plan Administrator under the Plan shall be distributed in such amounts and at such times as is reasonably prudent. On the Effective Date, or as soon as practicable thereafter, subject to this Plan , the Plan Administrator shall: (i) marshal manage and liquidate all then available Estate Assets; (ii) to the extent of unencumbered Cash or Cash distributable to the Holders of Allowed Claims, establish and fund the Claims Reserve Account pursuant to the Plan; (iii) promptly pay the Holders of (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) the Holders of Allowed Claims in Class 1, Class 2 and Class 3 and Class 4 as provided for under the Plan; (iv) make interim and final distributions of Estate Assets to the Holders of Allowed Claims from the Claims Reserve Account in the amounts and according to the priorities set forth in this Plan. Notwithstanding any provision to the contrary in this Plan, distributions may be made in full or on a Pro Rata basis depending on: (x) the amount of the Allowed Claim, (y) the then available Estate Assets in the Claims Reserve Account, and (z) the then anticipated Estate Assets. The Plan Administrator shall make the Cash payments to the Holders of Allowed Claims: (aa) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Plan Administrator in his sole discretion, or by wire transfer from a domestic bank, at the Plan Administrator's option, and (bb) by first-class mail (or by other equivalent or superior means as determined by the Liquidating Estate).

28

### 6.3. Withholding Taxes

Pursuant to section 346(f) of the Bankruptcy Code, the Plan Administrator shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Plan Administrator shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such Withholding Taxes. As a condition to making any distribution under this Plan, the Debtor, if on the Effective Date, or the Plan Administrator, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtor, if on the' Effective Date, and the Plan Administrator, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.

### 6.4. De Minimis Distributions

Notwithstanding anything to the contrary therein, the Liquidating Estate shall not be required to make a distribution to any Creditor if the dollar amount of the distribution is so small that the cost of making that distribution exceeds the dollar amount of such distribution. At the Final Distribution Date, the Plan Administrator may make a charitable donation with undistributed funds if, in the reasonable judgment of the Plan Administrator, the cost of calculating and making the final distribution of the remaining funds is excessive in relation to the benefits to the Creditors who would otherwise be entitled to such distributions.

### 6.5. Allocation of Distributions

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### 6.6. Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

### 6.7. Unclaimed Distributions

Any Unclaimed Distributions (as that term is defined) shall be redistributed to the Holders of Allowed Claims. Entities which fail to cash distributions within the time set forth in this Plan shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Estate or any Holder of an Allowed Claim to whom distributions are made by the Plan Administrator.

29

# ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### 7.1.    Resolution of Disputed Claims

All objections to Claims shall be filed and served not later than the Claims Objection Deadline.  If an objection is not timely filed or if no Extension Motion is pending by such deadline, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of this Plan. Unless otherwise provided in the Confirmation Order, the Plan Administrator is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, but upon prior approval by or notice to the Plan Oversight Committee to the extent specified herein, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

### 7.2.    Objections to Claims

Objections to Claims shall be brought by the Debtor or the Creditors Committee during the period prior to the Effective Date and by the Plan Administrator on behalf of the Estate after the Effective Date, but prior to the expiration of the Claims Objection Bar Date.  All Claims shall be subject to section 502(d) of the Bankruptcy Code.

### 7.3.    Disallowance of Claims without Further Order of the Court

As of the Effective Date, any Scheduled Claim designated as disputed, contingent or unliquidated in amount, and for which a proof of Claim has not been filed by the Claimant, shall be deemed expunged, without further act or deed.  All Scheduled Claims that correspond to a proof of Claim filed by a particular Claimant shall be deemed to have been superseded by such later filed proof of Claim and the Scheduled Claims, regardless of priority, shall be expunged from the claims register; provided however, that such proofs of Claim shall be subject to objection.

### 7.4.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable Bar Date. shall be a Disallowed Claim, and the Plan Administrator shall not make any distribution to a Holder of such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Plan Administrator shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

### 7.5.    Setoffs and Recoupments

The Liquidating Estate may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtor, the Liquidating Estate, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall

30

constitute a waiver or release of any such claim by the Debtor, the Liquidating Estate, against such Holder.

### 7.6.   *Reserve Provisions for Disputed Claims*
The Plan Administrator shall implement the following procedures with respect to the allocation and distribution of Cash to the Holders of Disputed Claims:

(i)      Cash respecting Disputed Claims shall not be distributed, but, if necessary, shall be withheld by the Plan Administrator in the relevant sub-account as a reserve in an amount equal to the amount of the distributions that would otherwise be made to the Holders of such Claims if such Claims had been Allowed Claims, based on the Disputed' Claims Amount.

(ii)     All Holders of Allowed Unsecured Claims shall be entitled to receive interim distributions under the Plan. No distributions may be made to the Holders of Allowed Unsecured Claims unless adequate reserves are established for the payment of Disputed Claims, and sufficient funds are, also reserved for payment of expected Estate Expenses. Upon the Final Resolution Date, after payment of all senior Claims, all amounts (if any) remaining in the Claims Reserve Account, after reservation of an appropriate amount for anticipated Estate Expenses, shall be transferred to sub-account (vi) for final distribution to the Holders of Allowed Class 4 Claims.

(iii)    Where only a portion of a Claim is Disputed, at the option of the Plan Administrator, interim or partial distributions may (but are not required to) be made with respect to the portion of such Claim that is not Disputed.

(iv)    For the purposes of effectuating the provisions of this Plan, the Bankruptcy Court may estimate the amount of any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be Allowed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of distribution under this Plan. In lieu of estimating the amount of any Disputed Claim,' the Bankruptcy Court or the Plan Administrator may determine the Disputed Claims Amount to be reserved for such Disputed Claim in the appropriate sub-account of the Claims Reserve Account, or such amount may be fixed by agreement in writing by and between the Plan Administrator and the Holder thereof.

(v)     When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the Holder of such Allowed Claim, in accordance with the provisions of this Plan, Cash equal to a Pro Rata Share of the Cash set aside for Disputed Claims within the applicable sub-account of the Claims Reserve Account, but in no event shall such Holder be paid more than the amount that would otherwise have been paid to such Holder if the Claim (or the Allowed portion of the Claim) had not been a Disputed Claim.

(vi)    Interim distributions may be made from time to time to the Holders of Allowed Claims prior to the resolution by Final Order or otherwise of all Disputed Claims, provided that aggregate amount of Cash to be distributed at such time from the Claims Reserve Account is practicable in comparison to the anticipated costs of such interim distributions: Notwithstanding

ME1 24569800v.2

the foregoing, no interim distribution shall be made to any Creditor whose distribution would be less than $50.

(vii)    No Holder of a Disputed Claim shall have any Claim against the Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed Claim. In no event shall any Holder of any Disputed Claim be entitled to receive (under the Plan or otherwise) from the Debtor, or the Claims Reserve Account any payment (x) which is greater than the amount reserved for such Claim by the Bankruptcy Court pursuant to this Plan except as otherwise permitted under this Plan, of interest or other compensation for delays in distribution. In no event shall the Plan Administrator have any responsibility or liability for any loss to or of any amount reserved under the Plan.

(viii)    To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Claim Amount reserved for such Disputed Claim, then the resulting surplus of Cash shall be retained in the Claims Reserve Account and shall be distributed among the Holders of Allowed Claims until such time as each Holder of an Allowed Claim has been paid the Allowed amount of its Claim.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1.    *Rejection of Executory Contracts and Unexpired Leases*

Except, with respect to executory contracts or unexpired leases that: (i) were previously assumed or rejected by order of the Bankruptcy Court, and (ii) are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; provided, however, that nothing in this Article VIII shall cause the rejection, breach or termination of any contract of insurance benefiting the Debtor and its Estate and/or any lease to which Debtor is a party as landlord, or any option in connection with the purchase, transfer or disposition of real property. Further, this Plan shall be deemed a motion to assume such insurance contracts and any real property-related options. Nothing in this Article VIII shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases and the Liquidating Estate shall bear no liability for costs associated with such matters.

### 8.2.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection (the "Rejection Bar Date"). Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to, Confirmation of the Plan

32

that is not Filed by the Rejection Bar Date will be forever barred from assertion against the
Liquidating Estate and its property. All such Claims for which proofs of claim are timely and
properly Filed and ultimately Allowed will be treated as Unsecured Claims subject to the
provisions of Article 3 hereof.

### 8.3.   Termination of Debtor's 401(k) Plan

On [], the Debtor filed a motion for authority to terminate its 401(k) plan, and on [], the
Bankruptcy Court entered an Order granting the Debtor's motion, and authorizing the Debtor to
take all and any actions necessary to terminate the 401(k) plan. The Debtor have since
effectuated the termination of the 401(k) plan, and nothing in the Plan shall amend or modify any
rights of any parties to their rights under the terminated 401(k) plan.

### 8.4.   Indemnification Obligations

Any obligations of the Debtor pursuant to its organizational documents and bylaws or
agreements, including amendments, entered into any time prior to the Effective Date, to
indemnify, reimburse, or limit the liability of any Covered Persons (as defined therein) pursuant
to the Debtor's' certificates of incorporation, bylaws, policy of providing employee
indemnification, applicable state law, or specific agreement in respect of any claims, demands,
suits, causes of action, or proceedings against such Covered Persons based upon any act or
omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to
the Effective Date with respect to all present and future actions, suits, and proceedings relating to
the Debtors shall not survive Confirmation of the Plan and shall be deemed cancelled and
discharged as of the Effective Date. Any Claims relating to such obligations shall be filed with
the Claims Agent on or before thirty (30) dates after the Effective Date.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION OF
## THE PLAN AND TO THE EFFECTIVE DATE

### 9.1.   Conditions to Confirmation of the Plan

Confirmation of this Plan is conditioned upon the satisfaction of each of the following
conditions precedent, any one or more of which may be waived by agreement of both the Debtor
and the Committee in writing: (i) the Bankruptcy Court shall have approved a disclosure
statement to this Plan in form and substance acceptable to Proponents; (ii) the Court shall have
signed the Confirmation Order and entered it on the docket of the Bankruptcy Case; which
Confirmation Order shall be in form and substance acceptable to Proponents and may not be
amended, modified, supplemented, or clarified without the prior consent of Proponents, the Plan
Administrator and the Post-Confirmation Committee if the Plan has already become effective
either before or after Confirmation; and (iii) the Confirmation Order shall not be subject to any
stay of effectiveness.

### 9.2.   Conditions to Effective Date

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the
following conditions precedent, any one or more may be waived by the Debtor and the
Committee in writing: (i) the Confirmation Order shall have become a Final Order which is
unstayed; (ii) the Confirmation Date shall have occurred; (iii) no request for revocation of the

Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or if made, shall remain pending; and (iv) the appointment of the Plan Administrator shall have been confirmed by order of the Bankruptcy Court, which may be the Confirmation Order.

### 9.3.   *Effect of Failure of Conditions to Confirmation the Effective Date*

If any one or more of the conditions in Article 9.2 are not met, Proponents may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

### 9.4.   *Effective Date*

The Effective Date shall be the Business Date following the satisfaction of the conditions set forth in Article 9.2.  The Plan Administrator shall file a notice of the occurrence of the Effective Date within five (5) Business Days thereof.

## ARTICLE X

## EFFECT OF CONFIRMATION

### 10.1.   *Binding Effect of Plan*

The provisions of the confirmed Plan shall bind the Debtor, the Liquidating Estate, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. This Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code section 1146(a).

### 10.2.   *Vesting of Property of Debtor in the Liquidating Estate*

Upon the Effective Date, title to all property of the Estate of the Debtor in the Chapter 11 Case shall vest in the Liquidating Estate and shall be retained by the Liquidating Estate for the purposes contemplated under this Plan.  Without limiting the generality of the foregoing, all Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Estate Assets earmarked for distribution to Creditors under the Plan, shall vest in the Liquidating Estate upon the Effective Date.

### 10.3.   *Limitation of Liability*

*The Debtor, the Committee and their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any Entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an*

34

ME1 24569800v.2

*Allowed Claim to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful or self interested misconduct, fraud or gross negligence (in each case, liability shall be subject to determination by final order of the Bankruptcy Court.. However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code. No provision of this Plan or the Disclosure Statement shall be deemed to act to or release any claims, Litigation claims or rights, or liabilities that the Liquidating Estate may have against any Entity or person for any act, omission, or failure to act that occurred prior to the Effective Date, nor shall any provision of this Plan be deemed to act to release any Litigation or Litigation claims.*

### 10.4.  Injunction

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor, the Liquidating Estate that arose prior to the. Effective Date are permanently enjoined from: (a) commencing or continuing in, any manner, directly or indirectly, any action or other proceeding of any kind, against the Debtor, the Estate, the Debtor or the Estate with respect to any such Claim or Interest; (b) the. enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Estate, or any property of the Liquidating Estate, the Debtor, or the Estate with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, or the Liquidating Estate, or any property of the Liquidating Estate, the Debtor or the Estate with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, the Estate, or the Liquidating Estate, or any property of the Liquidating Estate, the Debtor, or the Estate, with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this section shall prohibit the Holder of a timely-filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this. Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Estate under this Plan.

### 10.5.  Post-Confirmation Liability of Plan Administrator And Plan Oversight Committee

*The Plan Administrator and the members of any Plan Oversight Committee, together with their consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by. the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to any Entity for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under this Plan, except the Indemnified Parties will be liable for actions or*

35

*inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of the Bankruptcy Court. However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Estate shall, to the fullest extent permitted by the laws of the State of New Jersey, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Estate. To the extent the Liquidating Estate indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Estate Expenses. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.*

# ARTICLE XI

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.  To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2.  To administer the Plan, the Liquidating Estate, and the Estate Assets;

3.  To liquidate any Disputed Claims;

4.  To hear and determine any and all adversary proceedings; contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation;

5.  To hear and adjudicate any disputes with respect to any claim to the Escrow Funds and disburse the Escrow Funds;

6.  To hear and determine any and all motions and/or objections to fix and allow any Claims arising therefrom;

7.  To hear and determine any and all applications by Professionals for an award of Professional Fees;

36

ME1 24569800v.2

8. To enable the Plan Administrator to commence and prosecute any Causes of Action which may be brought after the Effective Date;

9. To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document or instrument contemplated by the Plan, including without limitation the Stipulation;

10. To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

11. To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

12. To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code; and

13. To close the Chapter 11 Case when administration of the Liquidating Estate and the case has been completed.

14. To hear objections to the proposed actions of the Plan Administrator, the activities of the Plan Oversight Committee and to fees for Post-Effective Date services.

This section shall not be deemed to be a waiver of any party's right to assert that the Bankruptcy Court lacks authority to enter Final orders in proceedings that are either statutory or constitutionally non-core proceedings.

## ARTICLE XII

## MISCELLANEOUS

### 12.1.   *Payment of Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Plan Administrator Trustee shall pay, prior to the closing of the Bankruptcy Case all fees payable pursuant to 28 U.S.C. § 1930 which accrue after the Effective Date through and including the closing of the Bankruptcy Case.

### 12.2.   *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, this Plan, the rights, duties and obligations arising under this Plan, and any claim or controversy directly or indirectly based upon or arising out of this Plan or the transactions contemplated by this Plan (whether based on

37

contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed and determined in accordance with, the internal laws of the State of New Jersey (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

### 12.3.  Corporate Action

Prior to, on and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the members or officers of the Debtor shall be deemed to have occurred and shall be in effect prior to, on and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtor is organized without any requirement of further action by the members or the officers of the Debtors.

### 12.4.  Modification and Revocation of Plan of Liquidation

The Proponents reserve the right to revoke and withdraw the Plan at any time on or before the Confirmation Date. If the Plan Proponent revokes or withdraws the Plan pursuant to this section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

### 12.5.  Exhibits

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement, and the Stipulation are, by this reference, hereby incorporated into the Plan. The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto. Proponents reserve the right to make non substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If, any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

### 12.6.  Filing of Additional Documents

Proponents shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.7.  Post-Confirmation Conversion/Dismissal

A Creditor or Party in Interest may bring a Motion to convert or dismiss the Case, under Section 1112(b) after the Plan is confirmed.  If there is a default in performance of the Plan, or if cause exists under Section 1112(b). If the Court orders the Case converted to Chapter 7, after the Plan is confirmed, then all property that had been property of the Liquidating Estate that has not been disbursed pursuant to the Plan will revest in the Chapter 7 Estate and the automatic stay will be reimposed on the revested property only to the extent the relief from the stay was not previously granted by the Court during the case.  If this case is converted to Chapter 7 after Confirmation, all Chapter 11 Administrative Expense Claims shall retain their Chapter 11 Administrative Expense status for distribution in the Chapter 7 case.

### 12.8.  Severability of Plan Provisions.

38

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Committee and the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.9. Preservation of Rights Against Insurance

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies that may cover Claims against the Debtor, its Employees, its members, or any other Person.

### 12.10. Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtor under Chapter 7 or 11 of the Bankruptcy Code).

### 12.11. Reservation of Rights

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are, specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

### 12.12. Further Assurances

The Debtor is authorized to execute, deliver, file or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of this Plan and to consummate the transactions and transfers contemplated by the Plan.

### 12.13. Section 1145 Exemption

Any rights issued under, pursuant to or in effecting this Plan, and the offering and issuance thereof by any party, including without limitation, the Plan Administrator  shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of

39

an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, section 1145 of the Bankruptcy Code.

### 12.14. Section 1146 Exemption

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtor, if on the Effective Date, and the Plan Administrator, if after the Effective Date, of the Debtor's property in implementation of or as contemplated by this Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 12.15. Determination of Tax Liability

The Plan Administrator is authorized, but not required, to request a determination under Section 505(b) of Bankruptcy Code of the tax liability of the Debtors for all taxable periods.

### 12.16 Computation of Time Periods

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall, not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done, is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

### 12.17 Record Date

To the extent a "Record Date" is required for implementation of this Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

### 12.18 Substantial Consummation

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

### 12.19. Waiver of Fourteen (14) Day Stay

Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(g).

ME1 24569800v.2

*12.20. Notices*

All notices in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. All communication shall be deemed sent if sent to the Debtor and the Creditors' Committee at the following address:

If to the Debtor:
Wasserman, Jurista & Stolz, P.C.
Attention: Daniel M. Stolz, Esq.
110 Allen Road, Suite 304
Basking Ridge, New Jersey  07920
Phone: 973-467-2700
Facsimile:  973-467-8126
dstolz@wjslaw.com

If to Committee
McCarter & English, LLP
Attention: David J. Adler
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
dadler@mccarter.com

If to Plan Administrator
Eduardo J. Glas, Esq.
Tseitlin & Glas, P.C.
345 Seventh Avenue, 21st Floor
New York, NY  10001
Phone: 212-944-7434
Facsimile: 212-202-5286
ejglas@gmail.com

*12.21. No Discharge*

The Debtor will not receive a discharge under the Plan in accordance with Section 1141 of the Bankruptcy Code.

*12.22. Plan Interest Rate*

If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in this Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

41